UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,<br>    Plaintiff<br>  v.<br><br>A PERMANENT EASEMENT FOR 0.035 ACRES OF LAND IN EAST CALN TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, TAX PARCEL NO. 40-2E-0019, LOUIS N. OTTAVIANO, SR., et al.<br>    Defendants | Action No. 09cv01047 |

## PRETRIAL MEMORANDUM FOR DEFENDANT

A. FACTUAL SUMMARY

  Defendant Louis N. Ottaviano, Sr. (hereinafter "Mr. Ottaviano") is the owner of a residential property located in East Caln Township, Chester County, Pennsylvania, identified as tax parcel number 40-2E-0019 ("the property"). When Mr. Ottaviano purchased the property on July 31, 1988, it was encumbered by existing right of way agreements in favor of Transcontinental Gas Pipe Line Corporation (hereinafter "Transco"). The existing Right of Way agreements combined amounted to a 75' Right of Way over the southwesterly portion of the property subject to the terms of three separate Right of Way agreements filed of record (A Right of Way Agreement Dated July 16, 1951, a Supplemental Right of Way Agreement dated July 22, 1958 and a Supplemental Right of Way Agreement dated July 25, 1966).

  In or about the Fall of 2007, Transco began the process of obtaining a certificate of public necessity from the Federal Energy Regulatory Commission (FERC) to replace and expand existing pipeline, including that which ran across Defendant's property. Transco's proposed

1

pipeline expansion was named the "Sentinel Expansion" project. A number of public meetings and hearings were held relating to the Sentinel Expansion project at that time and Louis Ottaviano then obtained representation of counsel and provided notice of such representation to Transco.

The Sentinel Expansion project encountered a great deal of public opposition, especially in the area in which the Defendant's property is located and various attempts were made to obtain an easement even before an appraisal had been made by Transco.

On August 14, 2008, FERC issued a Certificate of Public Necessity (the Certificate) authorizing the Sentinel Expansion project. However, the Certificate required certain accommodations and safeguards for property owners within an area designated the "Downingtown Replacement" area. Defendant's property is located within the Downingtown Replacement area. Specifically, the FERC Certificate required Transco to provide "individual, site-specific residential plans" prior to receiving condemnation authority for properties within the Downingtown Replacement. No such individual, site-specific residential plan was submitted to FERC with regard to Defendant's property, although a plan was prepared which was identified by Transco as complying with this requirement. The plan was deficient in many regards, and failed, among other things, to advise Defendant that a silt fence was going to be installed as part of the pipeline installation which would cause damage to the trees on his property.

Despite this, Transco proceeded with condemnation proceedings on Defendant's property filing a Complaint in Federal Court on March 10, 2009 as captioned above. Defendant opposed the Complaint in Condemnation on the grounds that the additional easement area that Transco sought on his property was excessive and not necessary to the project, among other things, and also identified various defects with respect to the plan which accompanied the condemnation.

As a result of these objections, the Plaintiff filed an Amended Complaint with a new plan addressing the deficiencies previously identified. Again, the Defendant objected to the condemnation but, in order to allow "possession" by the Plaintiff, the parties stipulated to a slightly lesser "taking" of Defendant's property and proceeded to the issue of just compensation.

The taking of an additional 8' Right of Way adjacent to the existing easement area increases the width of Transco's Right of Way from 75' to 83' over most of the length of the easement area that runs across the defendant property. As a result, post condemnation, almost 50% of the defendant property is subject to a gas pipe line easement. In point of fact, the pipeline restricts the property in such a manner that although there is a small portion of landlocked property in the corner, cut off from the house by the pipeline easement, the pipeline easement acts to restrict over one half of the property. Further, the most recent addition to the Right of Way, in combination with the application of local zoning regulations, precludes additional building on the property. The foregoing factors, combined with stigma relating to the installation of the Sentinel Expansion project, have resulted in a drastic reduction in the value of Defendant's property.

In addition to the effects upon market value, the Sentinel Expansion project has resulted in substantial damage and/or loss to certain trees on Defendant's property damaged by work done in the right of way area in installing the new 42" pipeline. This damage is identified in the expert report of Michael Martorana. Michael Martorana has identified that the three trees in close proximity to the newly installed pipeline had their roots damaged by the trenching for the pipe and trenching for the silt fence, damage severe enough that he concluded the trees are going to die and should be removed. These three trees are a Black Oak, a triple-trunk Sassafras and an American Beech.

A byproduct of the excavation work has been an increase in ponding around the Black Oak. Although the ponding and water damage to Mr. Ottaviano's house (which has resulted in flooding and other damages to Mr. Ottaviano's basement) are not the subject matter of this lawsuit, this ponding will further accelerate the death of the Black Oak. Mr. Martorana testified that if the large Black Oak had its roots soaked in water the roots will rot and accelerate the death of the tree.

Based upon well respected appraisal techniques, Mr. Martorana identified the values of the trees which are damaged and must be removed. Mr. Martorana specified that the Black Oak is valued at $70,300.00, the Sassafras is valued at $7,200.00 and the Beech is valued at $6,500.00. When being deposed, Mr. Martorana reviewed his calculations and re-determined the value of the Sassafras at $2,530. Thus, in addition to the damage to the property value caused solely by the "take", there is in additional or consequential loss of three significant trees valued at $79,330.00.

Further, because Mr. Martorana has recommended the removal of the three trees, and it is recognized that the Black Oak presents a risk to public and private safety, the damage caused by the pipeline work within the right of way also has resulted in damages which include the cost of removal of the trees. In this regard, Mr. Martorana provided an estimate of $3,100.00 to remove the Black Oak, grind the stump, remove the grindings, and apply soil and seed. Mr. Martorana estimated the costs for such work with respect to the Sassafras to be $750.00 and with respect to the Beech, he supplied an estimate of $1,750.00. Thus, the necessary cost of removal of these three trees establishes additional damages of $5,600.00.

Mr. Ottaviano, as the owner of the property is knowledgeable of the value of property in the area. He knows what properties were selling for and at what price he would put his property

on the market and what its value actually is. Mr. Ottaviano has identified that the condemnation of the pipeline easement area by Transco has, in and of itself, reduced his property value from $410,000.00 to $200,000.00. In reaching this conclusion, he is well aware of his duties of disclosure under Pennsylvania Law, the restrictions imposed upon his use of his property by the easement and expansion thereof, and the stigma created by the project.

In addition, Mr. Ottaviano, is entitled to compensation for the damages actually caused by the pipeline work which has resulted in damage to three trees which must be removed and which have been independently valued at $79,330.00, the removal of which will cost him an additional $5,600.00. As a result, Mr. Ottaviano is seeking compensation in the total amount of $294.900.00. In addition, Mr. Ottaviano seeks an award of reasonable attorney's fees and engineering fees[1]. Mr. Ottaviano's personal view of the loss in value of his property is supported as well by the expert witnesses, William Wood and Jeffrey Hellen who have appraised the estimated just compensation for the "take" as $82,500.00. This does not include the $84,930.00 damage to the trees caused by pipeline work within the right of way as referenced previously.

B. WITNESSES

1. Louis N. Ottaviano, Sr., 292 South Woodmont Drive, Downingtown, PA 19335 – Property Owner. Mr. Ottaviano will testify to his own estimate of value and just compensation as well as damages and his observations of the procedures and proceedings of the Condemnor including his direct communications regarding the Sentinel Expansion Project. Mr. Ottaviano's testimony regarding just compensation and damages are based upon his status as property owner, his understanding of the zoning laws, the laws of disclosure and his review of the expert reports that have been provided.

---

[1] This issue is addressed in greater detail in the section regarding anticipated legal issues at Section "J" within.

C. EXPERT WITNESSES

1. William Wood c/o William Wood Company, LLC, 120 West Market Street, West Chester, PA 19382 – Mr. Wood is a licensed appraiser and will testify to the value of the property right taken as well as the condemnation's effect on market value of the remainder property.

2. Jeffrey Hellen c/o William Wood Company, LLC, 120 West Market Street, West Chester, PA 19382 – Mr. Hellen is a licensed appraiser and will testify to the value of the property right taken as well as the condemnation's effect on market value of the remainder property.

3. Michael Martorana c/o Tree Doctors Home & Gardens, Inc. 2 Woods Lane, Parkesburg, PA 19365 – Mr. Martorana will testify to the damage occurring to trees as a result of the taking; the cost of removal of the trees and the replacement value of the lost and/or damages trees.

D. CURRICULUM VITAE

A curriculum vitae for each expert witness is provided in "Attachment A."

E. DESIGNATION OF VIDEOTAPED TRIAL TESTIMONY

Defendant does not anticipate presenting videotaped trial testimony.

F. DESIGNATION OF DEPOSITION TESTIMONY TO BE OFFERED AT TRIAL

It is anticipated that portions of the testimony of the deposition of Maureen Mastroieni will be offered at trial during cross-examination of her testimony.

G. MONETARY DAMAGES CLAIMED

Louis Ottaviano identifies damages as follows:

| | |
|---|---|
| Value of property before take: | $410,000.00 |
| Value of property after take   : | $200,000.00 |
| Difference in value caused by take: | $210,000.00 |

Damage caused by pipeline installation work within right of way to existing trees $79,330.00 plus costs of removal, $5,600.00 See, Martorana Report as revised by testimony during deposition of November 23, 2009 and Testimony of Mr. Ottaviano.

William Wood/Jeff Hellen identifies damages as follows:

| | |
|---|---|
| Value of property before take and unaffected by it: | $395,000.00 |
| Value of property after the take and as affected by it: | $312.700.00 |
| Total Just Compensation | $ 82,300.00 |
| Allocated as: | |
| Just compensation for the Right of Way | $ 3,300.00 |
| Severance Damages | $ 79,000.00 |
| Temporary Construction Easement | $    250.00 |
| **TOTAL** | **$ 82,500.00** |

H. STIPULATIONS  No stipulations have yet been reached between the parties.

H. OBJECTIONS TO EVIDENCE OF OTHER PARTY

Defendant Objections to the Expert Reports of Maureen Mastroieni identified as Exhibits P-4 and P-5 on grounds that the report violates Rules of Evidence 401, 402 and 702. In particular, Ms. Mastroieni has relied in her second appraisal of alleged evidence of a sale involving a property with a pipeline easement in her second Expert Report, but has failed to identify the property or her factual basis for same despite request for this information at her deposition. Further, Ms. Mastroieni has relied upon speculation in determining that the value of property subject to a pipeline easement has a land value at 50% of the value if unencumbered. Ms. Mastroieni has supplied no factual or scientific evidence or date supporting either of her reports and the contention that the existence of a pipeline has no affect on value of the property so encumbered and no "stigma". In her second appraisal Ms. Mastroieni has come up with a speculative value of "rent" for a partial take in the amount of 10% of property value with no basis therefore. Further, the appraisals are clearly prepared to reach a conclusion, not as an objective basis for determining value. In this regard both

7

appraisals reach the same result, despite the differences in the property involved and both appraisals establish the targeted $3,000.00 necessary for this Court to have jurisdiction.

Additionally, Defendant Objects to Exhibit "P-7 the Expert Report of Russell E. Carlson, RCA dated November 21, 2009 prepared to challenge the expert report of Michael Martorana. This document was prepared just two days before the deposition of Defendant's expert Michael Martorana and was supplied the day beforehand. The report is objected to as violating Federal Rules of Evidence 401,402 and 702 as it is not based upon an on the scene investigation as was the report of Michael Martorana conducted with direct observation of the activities at issue and does not appear to have calculations and measurements obtained first hand. Further, Mr. Carlson had not previously been identified as am expert and there was insufficient time to identify the authority or basis of this report or to schedule his deposition.

J. LEGAL ISSUES

**A. Qualification of Landowner as Expert Witness**

The Federal Rules of Evidence generally permit landowners to give opinion evidence as to the value of their land due to the special knowledge of property which is presumed to arise out of ownership. United States v. 68.94 Acres of Land, 918 F.2d 389; 1990 U.S. App. LEXIS 19127 (3d Cir. 1990) citing Fed. R. Evid. 702 advisory committee note ("within the scope of the rule are not only experts in the strictest sense of the word . . . but also the large group sometimes called 'skilled' witnesses, such as . . . landowners testifying to land values").

Further, an authority on eminent domain proceedings has noted:

> The owner of land taken is generally recognized as qualified to express his opinion as to its value merely by virtue of his ownership. The owner is deemed to have sufficient knowledge of the price paid, the rents or other income received, and the possibilities of the land for use, to render an opinion as to the value of the land.

Id. citing Nichols, The Law of Eminent Domain § 23.03 at 23-30 (1990) (citations omitted).

**B. Determination of Just Compensation (Pennsylvania Eminent Domain law applied)**

Once a natural-gas company has followed appropriate procedure and obtained a "certificate of public convenience and necessity" (hereinafter "Certificate") to construct, extend

8

or abandon transportation facilities, eminent domain power is conferred to the company under the Natural Gas Act (NGA), 15 U.S.C. §§ 717 et seq.

After the Certificate issues, Section 717(f)(h) becomes applicable:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided*, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

Following the direction in Section 717(f)(h), which states that the practice and procedure in any action under the NGA "shall conform as nearly as may be with the practice and procedure in similar action or proceeding" in state court, a number of courts have held that state law should be applied in determining the measure of just compensation.

Defendant avers that just compensation in this case should be determined in conformance with the Pennsylvania Eminent Domain Code. As this may be a matter of first impression to this Court, it is helpful to look for guidance from other district and circuit courts. Indeed, the Fifth, Sixth and Tenth Circuit Courts of Appeal have held, essentially, that "although condemnation under the Natural Gas Act is a matter of federal law, § 717f(h) incorporates the law of the state in which the condemned property is located in determining the amount of compensation due." Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement, 962 F.2d 1192, 1199, 1992 U.S. App. LEXIS 8840 (6th Cir. 1992).

The court in <u>Columbia Gas</u> found that the Section 717(f)(h) raises a strong presumption that state law provides the proper measure for the determination of just compensation in condemnations brought under the NGA. <u>Id.</u> at 1195. The court noted that that a number of reasons support adopting state law as the federal standard for determining compensation under § 717f(h): (1) Property rights have traditionally been defined in substantial part by state law; (2) incorporating state law as the federal standard will not frustrate the specific objectives of the Natural Gas Act; and (3) fashioning a nationally uniform rule of compensation for private parties exercising their power of eminent domain under the NGA was not necessary in that case. In sum, the court held that although condemnation under the Natural Gas Act is a matter of federal law, § 717f(h) incorporates the law of the state in which the condemned property is located in determining the amount of compensation due. Accord <u>Mississippi River Transmission Corp. v. Tabor</u>, 757 F.2d 662 (5th Cir. 1985); <u>Julius Spears v. Williams Natural Gas Company</u>, 932 F. Supp. 259 (D. Kan. 1996); <u>In re Columbia Gas Sys.</u>, 1992 U.S. Dist. LEXIS 9460 (D. Del. 1992) (reversed in part on other grounds).

In formulating its opinion, the <u>Columbia Gas</u> court relied heavily upon <u>Georgia Power Co. v. 138.3 Acres of Land</u>, 617 F.2d 1112 (5th Cir. 1980) in which the Fifth Circuit Court of Appeals applied state substantive law under "materially identical" language in the Federal Power Act, 16 U.S.C. § 814. <u>Georgia Power</u>, 617 F.2d at 1115-24.

**Pennsylvania Eminent Domain Code**

Under the Pennsylvania Eminent Domain Code, 26 Pa.C.S.A. § 701 et. seq., a condemnee is entitled to "just compensation for the taking, injury or destruction of the condemnee's property," determined as set forth in Chapter 26.

"Just compensation" is defined as:

> the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation.

26 Pa.C.S.A. § 702(a).

With regard to the determination of fair market value, the Pa. Eminent Domain Code also provides for a certain measure of damages:

> **26 Pa.C.S.A. § 706 Effect of condemnation use on after value.**
>
> **(a) General rule.** — In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken.

In addition, Pa. Eminent Domain Code ensures that condemnees will be compensated for consequential damages:

> **26 Pa.C.S.A. § 714 Consequential damages.**
>
> All condemnors, including the Commonwealth, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access or injury to surface support, whether or not any property is taken.

## Pennsylvania Eminent Domain Code Permits Limited Professional Fees

In addition to "just compensation" for the property interest acquired by the condemnor, the Pennsylvania Eminent Domain Code provides for reimbursement to the condemnee for professional fees incurred in connection with the condemnation:

> **26 Pa.C.S.A. § 710 Limited reimbursement of appraisal, attorney and engineering fees.**
>
> (a) General rule. — The owner of any right, title or interest in real property acquired or injured by an acquiring agency, who is not eligible for reimbursement of fees under section 306(g) (relating to preliminary objections), 308(d) (relating to revocation of condemnation proceedings)

11

or 709 (relating to condemnee's costs where no declaration of taking filed), shall be reimbursed in an amount not to exceed $4,000 as a payment toward reasonable expenses actually incurred for appraisal, attorney and engineering fees.

**(b) Attorney fees.** — In determining reasonable attorney fees under sections 306(g), 308(d), 709 and this section, the court shall consider all of the circumstances of the case, including, but not limited to, time records if available.

Defendant avers that the section set forth above with regard to reimbursement of professional fees is not only appropriate, but warranted in a case involving condemnation under the NGA. It is asserted that under the NGA, even though the sovereign powers of the United States are being exercised, the statutory "protections" that govern condemnations where the United States is a party are not explicitly set forth and, accordingly, where such remedies or protections are found they must be supplied to the greatest extent possible.

An example of the sorts of protections usually identified as explicitly applicable to the use of sovereign powers of condemnation is provided through the Uniform Relocation Assistance and Real Property Acquisition policies for Federal and Federally Assisted Programs found at 42 U.S.C. § 4654. This statute provides for reasonable litigation expenses to be paid to an owner in the event that the "final judgment" of the court is that the Federal Agency cannot acquire the property by condemnation, or the United States abandons the proceeding.

In view of this provision and in order to avoid its utilization, the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs and its accompanying regulations set forth a detailed process that the Federal Agency must follow in a condemnation action to ensure an adequate offer of just compensation is made and the parties engage in bona fide negotiations.

With regard to the valuation stage of a condemnation action in which the United State is a party, section 2412 of the Equal Access to Justice Act provides for the recovery of reasonable litigation expenses to the "prevailing party" in any civil action brought by or against the United States. 28 U.S.C. §2412.

The above referenced laws demonstrate a clear legislative intent to require condemnors to engage in fair negotiation practices. However, in the case of a condemnation under the NGA, the natural gas company, acting as sovereign, is not subject to such clearly elicited protective measures. As a result, the landowner is at a distinct disadvantage.

Despite the fact that a natural gas company, in this case, Transco, is conferred with the power of the sovereign to condemn, it is not subject to the same explicitly detailed requirements of good faith negotiation[2], appraisal and adequate offer of just compensation.

As such, it is incumbent upon the condemnee to invest in the assistance of professionals in order to obtain surveys, appraisals, and legal representation. In this case in particular, Mr. Ottaviano has incurred tremendous expense due to Transco's refusal to negotiate in good faith with him – first in refusing to reduce the size of the take immediately adjacent to his home, then in attempting to obtain greater rights through negotiation than allowed by the FERC Certificate, and, finally, in opting to seek possession through a costly trial rather than engage in bona fide negotiations.

As no federal statute can be found regarding the award of professional or attorney's fees in a condemnation under the NGA, despite the fact that there is clear legislative intent to compensate condemnees for situations in which the condemnor engages in unfair bargaining

---

[2] Defendant contends that there has not been good faith at any step of the proceedings. Defendant submits that he has extensive records to establish this failure of Plaintiff to "act fairly" or to negotiate "in good faith". It is submitted that Plaintiff has used all powers to drive up Defendant's cost in any challenge to any position of the Plaintiff whether such challenge relates to a matter of fact or law.

13

practices as noted previously, it is asserted that section 710 of the Pennsylvania Eminent Domain Code fills the gap in some small measure by supplying "limited reimbursement". Id.

In this particular instance, it is clear that Rule 71.1 does not supersede the direction of § 717(f)(h) of the NGA that the practice and procedure of the state should be adhered to as closely as possible, as Rule 71.1 is silent as to any "fee shifting provision that allows the owner to recover all of his expenses, including attorney's fees, from the condemnor." Guardian Pipeline v. 295.49 Acres of Land, 2008 U.S. Dist. LEXIS 35818, *21 (E.D. Wis. 2008).

**C. Trial Court under Rule 71.1. grants authority to Court to try all issues.**

This Court has clear authority to address all issues arising out of Transco's use of eminent domain. This is specifically set forth in Federal Rule of Civil Procedure 71.1(h) which specifies as follows:

> **(h) Trial of the Issues.**
>
> **(i) Issues Other Than Compensation; Compensation.** In an action involving Eminent domain under federal law, the court tries all issues, including compensation, except when compensation must be determined:
> (A) by any tribunal specially constituted by a federal statute to determine compensation; or
> (B) if there is no such tribunal, by a jury when a party demands one within the time to answer or within any additional time the court states, unless the court appoints a commission.

F.R.C.P. 71.1(h)

This authority is broadly interpreted. In fact, the Supreme Court of the United States in rendering a ruling and interpreting Federal Rule 71A(h), the predecessor to 71.1(h) (and containing similar language), remarked that "except for the single issue of just compensation, the trial judge is to decide all issues, legal and factual, that may be presented." United States v. Reynolds, 397 U.S. 14, 19 (1970).

In this particular case, Mr. Ottaviano is currently suffering damages caused by work arising from the pipeline installation. Credible evidence clearly establishes that three trees have been damaged when their roots were severed during construction and expert testimony has established that they must be removed at significant loss and expense to the property owner. If this damage is excluded from a determination of "just compensation" based upon an analysis much more stringent than is believed to be permitted by the law, the Court can still cast this issue before the jury or render its own ruling on this issue of "damage" under Rule 71.1(h).

Respectfully submitted:

LAW OFFICES OF JOHN S. CARNES, JR.

Dated: 12/30/09

By _____
John S. Carnes, Jr.; Attorney for Defendant