UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : | Civil Action No. 09cv01047 |
| Plaintiff | : | |
| v. | : | |
| A PERMANENT EASEMENT FOR 0.035 ACRES OF LAND IN EAST CALN TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, TAX PARCEL NO. 40-2E-0019, LOUIS N. OTTAVIANO, SR., et. al. | : | |
| Defendants | : | |

## DEFENDANT'S MOTION FOR SANCTIONS UNDER F.R.C.P. 11

Defendant Louis N. Ottaviano, Sr., (hereinafter "Defendant" or "Mr. Ottaviano"), hereby files a Motion requesting that this Court impose sanctions upon Plaintiff, Transcontinental Gas Pipe Line Company, LLC (hereinafter "Transco" or "Plaintiff") under Rule 11(b) of the Federal Rules of Civil Procedure.

1. On November 14, 2007, Mr. Ottaviano retained John S. Carnes, Jr. (Mr. Carnes) as counsel to represent him in the proposed expansion of Transco's pipeline on his property.

2. The next day, on November 15, Mr Ottaviano, along with Mr. Carnes, attended an informational meeting about the proposed gas pipeline expansion at the East Caln Township Building.

3. At the meeting, Mr. Carnes gave a Transco Representative his business card and informed such representative (or representatives) that he would be representing Mr. Ottaviano's interests with regard to the pipeline expansion.

4. Transco's acknowledgement that Mr. Ottaviano was represented by counsel is reflected in documents attached hereto as "Exhibit A."

5. Approximately one month later, Transco sent Mr. Ottaviano a Notice of Application, notifying him that it had filed an application for a Certificate of Public Convenience and

Necessity to construct, operate and abandon gas pipeline facilities, otherwise known and referred to as the "Sentinel Expansion Project" (the Project).

6. FERC issued a certificate of Public Convenience and Necessity for the Project on August 14, 2008.

7. In the months that followed, Transco's representatives repeatedly attempted to contact Mr. Ottaviano to negotiate an agreement for the transfer of additional easement area to Transco for the pipeline expansion. Mr. Ottaviano repeatedly informed the Transco representatives that he wanted a Transco attorney to contact his attorney to negotiate.

8. Transco continuously ignored Mr. Ottaviano's requests to communicate with an attorney for Transco, and did not contact Mr.Carnes.

9. True and correct copies of correspondence between the parties evidencing the above-alleged facts are attached hereto as "Exhibit B."

10. On May 23, 2008, Transco first sent Mr. Ottaviano a proposed "Supplemental Right of Way Agreement" (Agreement), which expanded the existing easement by another " 7 feet … to the North of the existing 30 inch natural gas pipeline." Along with the proposed Agreement, Transco extended an offer of $3,282.00 for 0.035 acres, which was purportedly based on 75% of a $125,000.00 per acre value. A copy of the proposed Agreement is attached hereto as "Exhibit C."

11. The "Supplemental Right of Way Agreement" proposed by Transco expanded upon the rights it had obtained in the FERC Certificate. Specifically, it allowed for the construction of "one or more additional pipelines, facilities or improvements" within the entire easement area, allowed for pipelines larger than 36 inches in diameter, identified rights to an additional "Temporary Work Space," and gave Transco the right to cut and remove trees.[1]

12. In addition to the rights it granted, the proposed "Supplemental Right of Way Agreement" would have prohibited Mr. Ottaviano from planting trees, paving, or using the area "in such a way as to interfere with Grantee's immediate and unimpeded access to said permanent right of way, or otherwise interfere with Grantee's lawful exercise of any rights herein granted."

---

[1] Defendant does note that subsequent proposed Supplemental Right of Way Agreements warranted that Transco would only install one pipeline on the property.

13. Further, the proposed Agreement would have essentially exempted Transco from liability for damages "caused by the construction of the existing pipeline(s) and the first additional pipeline, facilities or (other authorized) improvements."

14. Transco followed this proposal with two more variations over the next couple of months and sent land agents out to Mr. Ottaviano's residence who threatened him with eminent domain proceedings if he did not sign the Agreement. However, Transco still failed to contact Mr. Carnes.

15. In November of 2008, Transco hired an appraiser to determine the value of the taking. The appraisal resulted in a valuation of approximately $3,000.00, which is the minimum required amount in controversy in order file a Complaint for Condemnation under the Natural Gas Act.

16. On January 15, 2009, Transco sent a letter to Mr. Ottaviano extending a "final" offer. Mr. Ottaviano was to accept the offer by January 22, or it would be withdrawn. Mr. Ottaviano responded on January 17, again stating that he had been asking for months to be contacted by the Transco's attorney so that a negotiated agreement could be made, which had not been done. A copy of the correspondence is attached hereto as "Exhibit D."

17. It wasn't until February 2, 2009, that Elizabeth Witmer, counsel for Transco, finally contacted Mr. Carnes, at which point Ms. Witmer imposed a further deadline of February 12, 2009 for Mr. Ottaviano to sign the proposed Agreement in exchange for consideration of $4,375.00.

18. Mr. Carnes immediately responded to Ms. Witmer's correspondence by telephone, and it appeared that the parties were proceeding with negotiations at last.

19. Mr. Carnes wrote to Ms. Witmer on February 11, 2009, asserting a number of concerns that were negotiating points for Mr. Ottaviano, and pointing out that it would be impossible to negotiate a settlement by Transco's February 12 deadline.

20. In his Feb. 11 letter, Mr. Carnes also raised concerns about discrepancies between the plat plans provided to Mr. Ottaviano and the proposed Supplemental Right of Way Agreements.

21. Ms. Witmer's response did not address Mr. Ottaviano's concerns, and dismissed Mr. Carnes' concerns with regard to the discrepancies between the plat plan and the proposed Agreement.

22. On Monday, February 23, 2009, Mr. Carnes sent a letter to Ms. Witmer noting her failure to address Mr. Ottaviano's concerns, and requesting a meeting to discuss them with the goal of coming to an agreement. Ms. Witmer responded that the parties would have to meet that week.

23. True and correct copies of correspondence between counsel is attached hereto as "Exhibit E."

24. The parties met to discuss a settlement agreement, and it appeared that negotiations were moving forward, though Mr. Ottaviano still had a number of concerns to be addressed, including discrepancies between the plat plan and proposed Agreement, discrepancies between the FERC Certificate requirements and Transco's compliance, safety and liability issues, and whether the total amount of the proposed taking area was necessary to the project.

25. Transco, however, continued to pressure Mr. Ottaviano into a settlement with the threat of an impending condemnation proceeding, thereby forcing Mr. Ottaviano into the no-win situation of having to choose between taking an inadequate amount of compensation and leave unaddressed his concerns about safety and the exact area and location of the taking, or incur the expense of defending the action in court.

26. Counsel for Transco used the threat of an impending Condemnation action in an attempt to strong-arm Mr. Ottaviano into settling for a lesser amount than that to which he was rightfully entitled for the property interests taken.

27. After only one meeting with Mr. Ottaviano and his counsel, while the Defense considered negotiations to be ongoing, counsel for Transco filed a Complaint in Condemnation (the Complaint) and revoked its offer of $4,375.00 leaving on the table only $3,000.00 and forcing Mr. Ottaviano to defend this action. As a result, Mr. Ottaviano has incurred tremendous unnecessary litigation costs.

28. The property valuation set forth in the Complaint in Condemnation (and proposed settlement amount) was not based upon fair market value of the property interests to be taken,

but was determined as the lowest number that would allow Transco to institute Condemnation proceedings.

29.  Attached to Transco's Complaint for Condemnation was a drawing dated August 8, 2008, presumably reflecting the taking area.  The drawing showed an additional taking of 7' along the northwesterly edge of the existing easement, and a distance of 2' from Mr. Ottaviano's residence.  See Complaint, Exhibit B.

30.  In the Complaint, Transco asserted that it had been unable to acquire Mr. Ottaviano's property by contract.  This was not the case, as negotiations between the two parties had just begun.

31.  The filing of this action was with the intent of harassing and otherwise needlessly increasing the costs of litigation for Mr. Ottaviano.

32.  Still concerned about the discrepancies between various survey maps, plat plans, and proposed Agreements, Transco's failure to adequately comply with FERC Certificate requirements, and whether the additional right-of-way was necessary, concerns that were dismissed by counsel for Transco, Mr. Ottaviano, at great cost to himself, filed a Motion to Dismiss the Complaint.

33.  As a result of the filing of the Motion to Dismiss, Transco attorneys finally took notice of the problems with the survey map.  Suddenly, an Amended Complaint was necessary, as the original plan submitted with the Complaint was incorrect.

34.  The plat plan submitted with the Complaint represented an additional 7' taking, bringing the edge of the new right of way within 2' of the home, while, allegedly, the correct dimensions included an additional 8' along the existing easement, bringing the northwesterly easement line to a distance of 3' from the house.

35.  In response to Mr. Carnes' voicing of concern over the various discrepancies and questioning the accuracy of Transco's survey crews, Ms. Witmer responded that the taking had never changed, as the survey description had always been the same.  This response, of course, did not instill confidence in Mr. Ottaviano or Mr. Carnes.

36.  Mr. Ottaviano continued to voice concern over whether the additional taking on his property was even necessary, as no additional taking had been proposed on a neighbor's lot, and

the additional taking would severely limit Mr. Ottaviano's plans to construct additions to his home and garage.

37. It took Mr. Ottaviano's defense of the Condemnation action to achieve a settlement with regard to the taking. Transco agreed to forego a section of the additional 8' strip immediately adjacent to the house, belying Ms. Witmer's previous assertions that no changes to the proposed right of way area could be agreed to.

38. Once the Complaint had been filed, Transco essentially refused to negotiate in good faith at the proposed settlement conference with a Federal Magistrate, and identifying certain restoration work as part of offers of settlement until just the day before trial.

39. The jury's award of just compensation in this action was $8,400.00, more than double the amount of Transco's initial offer and almost twice the amount of its highest offer prior to Condemnation.

40. Transco's refusal to negotiate fairly with Mr. Ottaviano's counsel prior to instituting the Complaint for Condemnation and its refusal to offer an amount reasonably calculated to reflect fair market value has forced Mr. Ottaviano to incur unduly burdensome costs in defending this action, which could have easily been avoided had counsel for Transco simply addressed Mr. Ottaviano's concerns and offered a fair price at the outset.

41. In the Complaint for Condemnation, counsel for Transco asserted that representatives of Transco had contacted Defendant numerous times for the purpose of negotiating the acquisition of the additional easement; Transco offered an amount higher than the amount fixed by the appraisal, Mr. Ottaviano did not accept the offer and, therefore, "Transco has been unable to acquire the above-described property rights by contract".

42. Rule 11 of the F.R.C.P. (Rule 11) requires that an attorney or pro se party sign "every pleading, written motion, and other paper."

43. Rule 11 further states that by signing, filing, or submitting such a document, the attorney or pro se party "certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the filing is not being presented for an improper purpose and the factual contentions have or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

44. Counsel for Transco violated Rule 11 when it filed the Complaint for Condemnation in asserting that Transco has been unable to acquire the property rights by contract.

45. Transco did not make a true effort to acquire the property rights by contract, as it failed to contact Mr. Ottaviano's attorney as requested, it did not make an offer to purchase the property rights based on the fair market value of the property, and it dismissed Mr. Ottaviano's valid concerns about safety, compliance with the FERC requirements, and discrepancies between the various plat plans and survey descriptions.

46. In signing the Complaint for Condemnation, counsel for Transco knew, or should have known, that a truly valid effort had not been made to negotiate the acquisition by contract.

47. Counsel for Transco filed the Complaint for the purpose of bullying Mr. Ottaviano into accepting the highly inadequate offer (as evidenced by the Jury award) on Transco's terms. As such, Counsel for Transco violated Rule 11 by filing the Complaint for the purposes of harassing the Defendant and needlessly increasing the costs of litigation.

48. In order to deter repetition of the conduct described above by Transco and its counsel, and by others similarly situated, the Court should impose monetary sanctions upon Plaintiff and its counsel, payable to Defendant for all reasonable attorney's fees and expenses resulting from its violation of Rule 11.

WHEREFORE, Defendant respectfully requests that this Court grant Defendant's Motion for Sanctions, and impose monetary sanctions upon Plaintiff for its misuse of the condemnation proceedings and its failure to engage in legitimate negotiations with Defendant in order to prevent the litigation of this matter.

JOHN S. CARNES, JR., ESQUIRE
Attorney I.D. No. 47338

LAW OFFICES OF JOHN S. CARNES, JR.
320 North High Street, Suite 103
West Chester, Pa 19380
610-436-7500

*Attorney for Defendant*

Dated:  February 4, 2010

**EXHIBIT A**

*271*

**Williams**

# Contact Report

Contacting Agent:   Laura Stauch                            Date of Contact:   11/02/07

Line #:  204A1              Tract #:   140                   Mile Post (Entering): _____

Contact with:   Louis N. Ottaviano, Sr. _____

Business/Firm: _____                              Phone:   Unknown/unlisted

Address:  292 Woodmont Drive

City:  Downingtown                     State:   PA     Zip Code:   19335

Additional Information: _____

---

X Owner    ☐ Tenant    ☐ Attorney    ☐ Employee    ☐ Other: _____

Reason for Contact Report:   ☐ Survey Notification    ☐ Easement Negotiation    ☐ Change

☐ Construction Notification    ☐ Alignment Issues    X Public Outreach    ☐ Other: _____

Kind of Contact:

X In Person    ☐ Phone    ☐ Mail (Copy Attached)    ☐ E-mail (Copy Attached)    ☐ Fax (Copy Attached)

Survey Request/ Notification Information:

Survey Access Granted:  ☐ Yes  ☐ No       Prior Notification Required:  ☐ Yes  ☐ No

Days/ Hours Advanced Notice: _____

---

Acquisition Information:

Type of Acquisition:

☐ Permanent Easement          ☐ Temporary Easement          ☐ Temporary Workspace

☐ Permanent Access Roads      ☐ Temporary Access Roads      ☐ Fee Purchase

☐ Pipeyard Leases             ☐ Mitigation Site             ☐ Other

---

Above Ground Pipeline Appurtenances:   ☐ Yes  ☐ No   Type: _____

Timber Disposal:    ☐ Landowner use    ☐ Remove

Status of Easement Negotiations:

X Contact prior to offer    ☐ Offer    ☐ Accepted    ☐ Signed    ☐ Closed

Negotiations:

☐ Good    ☐ Considering    ☐ Not Good    ☐ Probable Condemn    ☐ Rejected    ☐ Condemn

Contact Number: _____            Next Meeting: _____

Items or Changes Needed for Next Meeting: _____

---

Current Offer is $: _____       Owner Current Counter-Offer is $: _____

General Comments ( Brief Summary with details on 2nd Page ):   Met with Mr. Ottaviano and showed
him drawings of the new proposed work corridor. Mr. Ottaviano said he is not agreeable to the
acquisition of any new additional ROW whatsoever and not to approach him with an offer. He said we
would have to deal with his attorney but he would not designate an attorney for us to contact. Mr.
Ottaviano attended the public meeting with his attorney and spoke with Don Rich and other Williams
representatives but I could not get away to speak with him.

*CR# 1614*

*AC 11-28-07*

Agent's signature:   Laura Stauch                          Date:  November 26, 2007

TRAN-OTT_0032

*511*

-----Original Message-----
From: Witmer, Elizabeth U.
Sent: Wednesday, February 04, 2009 3:11 PM
To: jcarnes@jcatty.com
Cc: 'McClusky, Patrick J'; Howley, Diane
Subject: FW: Ottaviano Appraisal

John - Thanks for taking the time to speak with me regarding the easement sought by
Transco on the property of your client, Mr. Ottaviano.  I attach the appraisal, which was
delivered directly to Mr. Ottaviano.  It is my understanding that a land agent attempted
to contact Mr. Ottaviano in April, May and June of 2008, and did have a meeting with him
in July of 2008.  He mentioned at that meeting that he had an attorney but would not
identify the attorney to the land agent.  The land agent was not successful in obtaining a
meeting with Mr. Ottaviano after the meeting in July.  The land agent mailed him a new
proposed agreement after that meeting in July, and mailed him a revised offer in October
of 2008.  Mr. Ottaviano was also sent a Residential Construction Plan for his review and
comment in October 2008.  Thereafter, Transco sent a final offer letter to Mr. Ottaviano
in January, 2009.  After that letter, Mr. Ottaviano filed a letter with FERC and the land
agent discovered that you were counsel to Mr. Ottaviano.  We therefore sent the follow up
final offer letter to you on Monday, February 2, 2009 after FERC approved the Residential
Construction Plan for Mr. Ottaviano's property.  Transco seeks a negotiated acquisition of
the  easements proposed on Mr. Ottaviano's property.  As we briefly discussed, those
easements are shown on the plats attached to the easement agreement sent to you, and are
discussed in the appraisal which I am forwarding with this email.  Transco has offered
$4,375.00 to acquire the easements sought; the appraisal amount is $3,000.00.  We would
like to know Mr. Ottaviano's concerns and see if we can address them.  I understand you
will be talking with your client and will get back to me.  I look forward to talking with
you about this matter.

Elizabeth Witmer
Elizabeth U. Witmer | SAUL EWING LLP | 1200 Liberty Ridge Drive, Suite 200, Wayne, PA
19087 | (610) 251-5062 | ewitmer@saul.com

# EXHIBIT B

# Williams

## RESIDENTIAL CONSTRUCTION PLAN

## COMMENT FORM

### SENTINEL EXPANSION PROJECT (DOCKET NO. CP08-31-000)
### DOWNINGTOWN 42-INCH MAINLINE "A" REPLACEMENT
### -PHASE 2-

| | |
|---|---|
| NAME: Louis N. Ottaviano   INTERVENER | Tract No.     204A1 |
| Address: 292 South Woodmont Drive | Tax ID.       40-2E-0019 |
| Downingtown, PA 19335 | Drawing No.  26-26-70/1716.70 |

November 14, 2008

RE:

𝔚𝔢 𝔗𝔥𝔢 𝔓𝔢𝔬𝔭𝔩𝔢....

In Opposition to Williams et.al, response to the (FERC), Condition 17 Requirements, the lack of States Rights (there by denying me my Constitutional Rights), Deceptive and Bad Faith Negotiation (by Williams, et.al), The Threat of "Eminent Domain" and the Overreaching Authority of the Federal Energy Regulatory Commission.

Chester County Pennsylvania is a wonderful place to live. Just take a drive through the tree lined country side, enjoy the many bridges (some covered) over the streams and rivers, through the rolling hills and past the still working farms WOW! People work their whole lives to live in a place like this. Some call it the American dream. If I lived in one of the many Historic towns in Chester County and wanted to add something to my property I would half to go through various local historic committees to get my project approved so as to be in keeping with historical value of the town. The land on witch these towns are established are non the less historical as the buildings.

When I bought my home and the property on which it sits I accepted the condition at the time and my responsibility as stewardship of this land, I knew what to expect as in an agreement in good faith.

As a continuing result of the total disregard for my rights and the attempt by Williams, et.al., to minimize the request by (FERC) as to Condition 17 Requirements, Please see EXHIBIT "A" the findings of F. X. BROWN Engineers who review the Detailed Residential Construction Plan For my Home and Property at my request.

DATE:   11/14/2008                              PAGE ___1___ OF _____

# Williams

## RESIDENTIAL CONSTRUCTION PLAN

## COMMENT FORM

### SENTINEL EXPANSION PROJECT (DOCKET NO. CP08-31-000)
### DOWNINGTOWN 42-INCH MAINLINE "A" REPLACEMENT
### -PHASE 2-

NAME: Louis N. Ottaviano   INTERVENER

Address: 292 South Woodmont Drive

Downingtown, PA 19335

Tract No.      204A1

Tax ID.        40-2E-0019

Drawing No.    26-26-70/1716.70

In addition to the E. F. BROWNE, INC. Report Please see my minimum requirements, but not limited to the following:

NOW THERE FORE All negotiations regarding this matter will be at a time and place agreeable to all, with my Attorney and Williams, et.al. Attorney present, and with all maps, plans, agreements and any and all documents to make a reasonable decision, not at my front door with a land agent waving an agreement in front of me and threatening me with "Eminent Domain"
(in the past 8 month I have received 3 different Supplemental Right-of-Way Agreements) This is a legal matter and any reasonable person in good conscience can not allow Williams, et.al. or FERC to deny me due process, my legal and or my Constitutional Rights.

Of course, this response is written without prejudice to all my existing rights, and is on going, it will not end as long as there is a Right-of-Way on my property on which I pay Taxes and Maintain.

Sincerely "This Land Is My Land"

Louis N. Ottaviano
Lno1225@gmail.com
610-873-0816
610-873-0144 fax

DATE:      11/14/2008

PAGE __2__ OF _____



Louis Ottaviano <lno1225@gmail.com>

# Sentinel Expansion Project (Docket no. CP08-31-000)Phase 2/Environmental Condition 17-RESPONSE to Williams et al. Comment Responses

Louis Ottaviano <lno1225@gmail.com>
To: FERCOnlineSupport@ferc.gov

Fri, Dec 19, 2008 at 3:13 PM

NAME: Louis N. Ottaviano INTERVENER

ADDRESS: 292 South Woodmont Drive

Downingtown Pa 19335
26-26-70/1716.70

TRACT NO. 204A1

TAX ID 40-2E-0019

DRAWING NO

December 19 2008

Dear Ms. Bose:

Having read the Comment Responses from Williams et al. I find myself somewhat confused. "1) Transco will **continue to negotiate in good faith** with the landowner or authorized representative."

    1. The use of the word **continue** suggests that somewhere at some time talks have taken place. **THIS HAS NOT HAPPENED**

    2. The use of the word **negotiate** suggests that meetings and discussion have taken place. **THIS HAS NOT HAPPENED**

    3. This leaves the phrase **in good faith** .....?   HONESTY, TRUST...?

Now I do not want to insult anyone's intelligence. Williams et al has hundreds of people on their payroll working on this Project, I myself do not. So if we are to **negotiate in good faith** let's do so. Of course, this response is written without prejudice to all of my existing rights, and is ongoing.

Sincerely and Respectfully,

Louis N Ottaviano

*Louis N. Ottaviano*
*292 South Woodmont Drive*
*Downingtown  Pa  19335*

*610-873-0816*

January 17, 2009

Williams, et. al.
Patrick Mc Clusky
349 State Route 31,Suite 601
Flemington, NJ 08822

Sent by: fax, e-mail, us mail
908-788-8696 Phone
908-788-8009 Fax

Re:   Williams et. al. Demand Letter To Accept Final Offer Dated January 15, 2009
      Sentinel Expansion Project (Docket # CP08-31-000)
      Tax Parcel No. 40-2E-0019
      Tract No. 204AI

Dear Mr. Mc Clusky:

As you know, it has been months (if not years), that I have been asking for your company's attorney to contact me so as to come to an negotiated agreement with me. To date this has not been done.

As you know, this is a legal matter. As I stated before " All negotiation regarding this serious legal matter will be, at a time and place agreeable to all, with my attorney and Williams et. al. attorney present, and with all map, plans, agreements and any and all documents to make a reasonable decision".

Your timely response is anticipated in good faith.

Of course, this letter is written without prejudice to all my existing rights and is on going. It will not end as long as there is a right-of-way on my property on which I pay taxes and maintain.

Sincerely,

Louis N. Ottaviano
Cc:   FERC
      John S. Carnes, Jr., esq.
      Alan M. Rosen, esq.
      Carolyn Elefant, esq.
      Andrew Dinniman – Pennsylvania State Senator
      Arlen Spector – United States Senator
      Lynda Farrell

**EXHIBIT C**

**EXHIBIT C**



**GAS PIPELINE -**

**TRANSCO**

99 Farber Road
Princeton, New Jersey 08540
Tel:   609-936-2400
FAX:  609-936-2430

May 23, 2008

Mr. Louis N. Ottaviano, Sr.
292 South Woodmont Dr.
Downingtown, PA 19335

RE: Williams-Transcontinental Gas Pipeline Corporation (Williams-Transco);
Sentinel Expansion Project, Proposed 42" pipeline replacement
40-2E-0019 East Caln Twp., Chester Co., PA

Dear Mr. Ottaviano:

Enclosed, please find package containing information related to the proposed
Williams-Transco Sentinel Pipeline Project, referenced above which affects your
property. Included with this information is a Supplemental Right of Way Agreement,
which is for the expansion of the existing 75' wide easement by another 7' of
permanent Right of Way to the North of the existing 30 inch natural gas pipeline ("A"
Line).   As you may know, existing 30 inch "A" Line is to be replaced with a 42 inch
natural gas pipeline in 2009. These areas are depicted on the Exhibit "A" attached to
the Supplemental Right of Way Agreement.

At this time we extend an offer to you for the above referred to Supplemental Right of
Way of $3,282.00.  We have performed a market analysis of the value of vacant
residential land in your area, taking in to consideration recent property sales, what the
landowner paid for the property, the assessed value and a regional appraisal. The
offer is based on a Fee value of $125,000.00 per acre. Rights of Way and Easements
are typically valued at a fractional percentage of the Fee. Our offer for the proposed 7'
of additional permanent Right of Way is valued at 75% of the $125,000.00 per acre for
a total of $3,282.00 for 0.035 acres.  We are willing to listen to any reasonable
information that you may have that should be considered in determining these values.

There are other issues to discuss in advance of the planned Spring-Summer 2009 construction. Briefly, the physical impact to your lawn, driveway and landscaping, if any, will be addressed during the negotiations.   There may be brief periods of interruption to access to your property during construction, but this will be coordinated with you in advance. This should only happen at the time the pipeline is lowered into the ditch.  Any extraordinary issues that you may have about construction would be addressed in the Construction Stipulation Agreement included with the package. I would like to meet with you at your earliest convenience to discuss these issues in more detail. I can be reached by telephone at 508-317-7527 and by email at diane.howley@williams.com.

Sincerely,

Diane Howley
Sr. Land Representative

# CONSTRUCTION STIPULATION AGREEMENT

In accordance with the terms and conditions of the easement, **LOUIS N. OTTAVIANO, SR.**, whose address is 292 S. Woodmont Drive, Downingtown, PA, 19335 hereafter called the Grantor, and **TRANSCONTINENTAL GAS PIPE LINE CORPORATION** hereafter called the Grantee agree to the following during the construction of a natural gas pipe line on Grantor's property, to wit:

1.

Agreed to this _____ day of _____, 2007.

**Signatures**                           **Printed Names**

Grantor: _____        _____

Grantor: _____        _____

Land Agent: _____        _____

R/W #:   204A1        PTract #:   PD-140.0     Tax ID #:   40-2E-0019        Date: _____

TGPL 0208

Prepared by:

Patrick McClusky

Line #:          10-100
R/W #:          204A1
Tract #:        PD-140.0
Tax #:          40-2E-0019
Municipality:   East Caln
County:         Chester
Commonwealth :  Pennsylvania

## SUPPLEMENTAL RIGHT OF WAY AGREEMENT

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF CHESTER

This Supplemental Agreement, made the_____ Day of _____, 2008 by and between LOUIS N. OTTAVIANO, SR. whose address is 292 South Woodmont Drive, Downingtown, PA 19335 (hereinafter called GRANTOR, whether one or more) and TRANSCONTINENTAL GAS PIPE LINE CORPORATION, a Delaware corporation having an office at 2800 Post Oak Boulevard, Houston, TX 77056-6106 its successors and assigns, (hereinafter called GRANTEE),

WHEREAS, by an agreement dated 07/16/1951 and recorded in the Chester County Clerk's office, in Deed Book 95 Page 190 as the same may have been heretofore supplemented and amended (herein individually and collectively referred to as the Original Agreement) the Grantor or Grantor's predecessor in title did grant, bargain, sell and convey unto the Grantee, its successors and assigns, a right of way and easement therein more particularly described or referred to for the purpose, among other things, of laying, constructing, maintaining, operating, repairing, altering, replacing and removing its pipelines and appurtenant facilities under, upon, over, through and across those certain lands located in the Township of East Caln, Chester County, Commonwealth of Pennsylvania, and described as follows:

Parcel ID # 40-2E-0019 as described in deed dated 07/13/1988 and recorded in the Chester County Clerk's office on 07/20/1988 in Deed Book 1220, Page 122.

WHEREAS, at the request of the Grantee, the Grantor has consented and agreed to further modify, amend, supplement and enlarge said Original Agreement in the manner hereinafter set forth:

NOW, THEREFORE, in the consideration of the sum of _____ Dollars ($ _____) cash in hand paid, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, said Grantor does hereby grant, bargain, sell, convey, ratify and confirm unto the Grantee, its successors and assigns, all that right of way and easement with the appurtenant rights and privileges and subject to the duties and obligations, all as described or referred to in the above mentioned Original Agreement, except that the said right of way and easement is hereby modified, amended, supplemented and enlarged as follows:

1. Grantee's existing pipeline(s) is/are constructed within the permanent right of way and easement hereinafter described. One or more additional pipelines, facilities or improvements may be constructed under the provisions of this agreement and shall be located within the permanent right of way and easement hereinafter described. Grantor agrees that Grantee may construct and install pipelines larger than thirty-six (36) inches in diameter and may replace the existing pipelines with pipelines larger than thirty-six (36) inches in diameter.

2. The permanent right of way and easement shall be a strip of land identified as existing right of way and proposed right of way, all as shown on a drawing marked Exhibit "A" attached hereto and made a part hereof.

3.   During the course of construction of the first of the additional pipelines, facilities or improvements authorized above, Grantee shall have the right to enter upon, clear off, and use an additional strip (or strips) of land contiguous to the right of way described above, such strip (or strips) of land being identified on the attached Exhibit "A" as "Temporary Work Space."

4.   Grantee shall have all other rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, including, but without limiting same to, the free and full right of ingress and egress over and across said lands of the Grantor to and from said right of way and easement and the right, from time to time as it may find convenient, to cut and remove all trees, undergrowth and other obstructions from the permanent right of way.

The Grantor specifically covenants and agrees:

(a)    The strip of land, first above described, is the permanent right of way granted.

(b)    Grantor will not build any structures on said permanent right of way or any part thereof, change the grade of said permanent right of way, or any part thereof, plant trees on said permanent right of way or any part thereof, pave longitudinally along and upon said permanent right of way or any part thereof, or use said permanent right of way or any part thereof in such a way as to interfere with Grantee's immediate and unimpeded access to said permanent right of way, or otherwise interfere with Grantee's lawful exercise of any of the rights herein granted.

TO HAVE AND TO HOLD said right of way and easement unto said Grantee, its successors and assigns, for so long as a pipeline is maintained thereon.

Grantor acknowledges that _____ dollars ($_____) of the consideration for the above described right of way and temporary work space areas as identified on the attached exhibit "A" is payment in full for any damages caused or to be caused by the construction of the first additional pipe line, facilities or improvements hereunder.

Grantee, by its acceptance hereof, covenants and agrees:

(a)    Except for the damages caused by the construction of the existing pipeline(s) and the first additional pipeline, facilities or improvements authorized hereunder, Grantee will reimburse the Grantor for any loss or damage to property which Grantor may suffer as a consequence of the laying, constructing, altering, repairing, removing, changing the size of, or replacing any pipelines, facilities or improvements, in the exercise of the rights herein granted except that neither the Grantor nor any persons or firms holding under the Grantor shall assert any claims for severance or consequential damages.

(b)    It will defend and save harmless the Grantor from any claims or suits which may be asserted against the Grantor arising out of any negligent acts of Grantee, its agents or employees, in its exercise of the rights herein granted.

Except as herein modified and amended, the Original Agreement first above referred to is hereby ratified and confirmed in all respects.

It is agreed that the aforesaid Original Agreement and this Agreement, cover all the agreements between the parties with respect to the subject matter and no representations or statements, verbal or written, have been made, modifying, adding to, or changing the terms thereof.

It is further agreed that the several terms, covenants, conditions and agreements herein contained shall in every case be binding upon and inure to the benefit of the respective parties hereto, their respective heirs, executors, successors and assigns, with the same force and effect as if specifically mentioned in each instance where a party is named.

IN TESTIMONY WHEREOF, the Grantor has hereunto set his hand and seal this_____day of _____, 2008.

ATTEST / WITNESS:

_____  X _____ (SEAL)
                                       LOUIS N. OTTAVIANO, SR.

COMMONWEALTH OF PENNSYLVANIA  ⎫
                              ⎬  SS
COUNTY OF CHESTER             ⎭

On this _____ day of _____, 2008, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared   LOUIS N. OTTAVIANO, SR. known to me (satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

_____(SEAL)
Notary Public

My Commission Expires:

_____



EXHIBIT A

**EXHIBIT D**



**TRANSCO PIPELINE**
349 State Route 31, Suite 601
Flemington, NJ 08822
(908) 788-8696
(908) 788-8009 fax

January 15, 2009

<u>Via Federal Express</u>

Louis N. Ottaviano, Sr.
292 S. Woodmont Drive
Downingtown, PA 19335

> Re: Transcontinental Gas Pipe Line Company, LLC
> Sentinel Pipeline Expansion Project
> Tax Parcel No. 40-2E-0019
> Transco Tract No. 204A1

Dear Mr. Ottaviano:

As you know, Transcontinental Gas Pipe Line Corporation (now Transcontinental Gas Pipe Line Company, LLC) ("Transco") is undertaking the acquisition of easements and other property rights for a federally approved gas pipeline project that will cross on or near your property at Tax Parcel Number 40-2E-0019. Beginning in 2007 we met with you, corresponded with you by mail, or spoke with you on numerous occasions regarding this pipeline project, called the Sentinel Pipeline Expansion Project, and its potential impact on your property.

The purpose of this letter is to extend to you a final good faith offer to purchase a **permanent easement**, as described in the attached **Supplemental Right of Way Agreement**.

Transco's final offer for the purchase of permanent easement across your property is **$4,375**. This offer supersedes any and all previous oral or written offers or agreements regarding these property rights. As you know, we have engaged an appraiser to perform an appraisal of your property, a copy of which has previously been given to you, which values the property rights sought to be acquired by Transco. That appraisal values the property rights which Transco seeks to acquire at $3,000, substantially less than Transco's current offer.

This offer is withdrawn if it is not accepted by you by **January 22, 2009**. In order to accept this offer, please execute the enclosed documents and return them to me by **January 22, 2009**.

If you do not accept this final offer, the matter will be turned over to our attorneys for further handling.

If you wish to accept this offer, or wish to discuss it further, please contact me at **(508) 317-7527**.

Sincerely,

*Diane Howley*

Diane Howley
Land Representative

cc: Elizabeth U. Witmer, Esquire
Louis N. Ottaviano, Sr. (w/o enclosures, by First Class Mail)

TGPL-0205

Prepared by: _____
Patrick McClusky

| | |
|---|---|
| Line #: | 10-100 |
| R/W #: | 204A1 |
| Tract #: | PD-140.0 |
| Tax #: | 40-2E-19 |
| Municipality: | East Caln |
| County: | Chester |
| Commonwealth: | Pennsylvania |

## SUPPLEMENTAL RIGHT OF WAY AGREEMENT

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF CHESTER

    This Supplemental Agreement, made the_____ Day of _____, 2009 by and between **LOUIS N. OTTAVIANO, SR.** whose address is 292 South Woodmont Drive, Downingtown, PA 19335 (hereinafter called **GRANTOR**, whether one or more) and TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, (formerly TRANSCONTINENTAL GAS PIPE LINE CORPORATION), a Delaware corporation having an office at 2800 Post Oak Boulevard, Houston, TX 77056-6106 its successors and assigns, (hereinafter called GRANTEE),

    WHEREAS, by an agreement dated 07/16/1951 and recorded in the Chester County Clerk's office, in Deed Book 95 Page 190 as the same may have been heretofore supplemented and amended (herein individually and collectively referred to as the Original Agreement) the Grantor or Grantor's predecessor in title did grant, bargain, sell and convey unto the Grantee, its successors and assigns, a right of way and easement therein more particularly described or referred to for the purpose, among other things, of laying, constructing, maintaining, operating, repairing, altering, replacing and removing its pipelines and appurtenant facilities under, upon, over, through and across those certain lands located in the Township of East Caln, Chester County, Commonwealth of Pennsylvania, and described as follows:

Parcel ID # 40-2E-0019 as described in deed dated 07/13/1988 and recorded in the Chester County Clerk's office on 07/20/1988 in Deed Book 1220, Page 122.

    WHEREAS, at the request of the Grantee, the Grantor has consented and agreed to further modify, amend, supplement and enlarge said Original Agreement in the manner hereinafter set forth:

    NOW, THEREFORE, in the consideration of the sum of **Four Thousand Three Hundred Seventy-five and 00/100 Dollars ($4,375.00)** cash in hand paid, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, said Grantor does hereby grant, bargain, sell, convey, ratify and confirm unto the Grantee, its successors and assigns, all that right of way and easement with the appurtenant rights and privileges and subject to the duties and obligations, all as described or referred to in the above mentioned Original Agreement, except that the said right of way and easement is hereby modified, amended, supplemented and enlarged as follows:

    1.  Grantee's existing pipeline(s) is/are constructed within the existing permanent right of way and easement. Grantee agrees that no additional pipelines will be constructed within the proposed additional permanent right of way and easement. Grantor agrees that Grantee may construct and install pipelines larger than thirty-six (36) inches in diameter and may replace the existing pipelines with pipelines larger than thirty-six (36) inches in diameter.

    2.  The permanent right of way and easement shall be a strip of land identified as existing right of way and proposed right of way, all as shown on a drawing marked Exhibit "A" attached hereto and made a part hereof.

3.   During the course of construction of the first of the additional pipelines, facilities or improvements authorized above, Grantee shall have the right to enter upon, clear off, and use an additional strip (or strips) of land contiguous to the right of way described above, such strip (or strips) of land being identified on the attached Exhibit "A" as "Temporary Work Space."

4.   Grantee shall have all other rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, including, but without limiting same to, the free and full right of ingress and egress over and across said lands of the Grantor to and from said right of way and easement and the right, from time to time as it may find convenient, to cut and remove all trees, undergrowth and other obstructions from the permanent right of way.

The Grantor specifically covenants and agrees:

(a)   The strip of land, first above described, is the permanent right of way granted.

(b)   Grantor will not build any structures on said permanent right of way or any part thereof, change the grade of said permanent right of way, or any part thereof, plant trees on said permanent right of way or any part thereof, pave longitudinally along and upon said permanent right of way or any part thereof, or use said permanent right of way or any part thereof in such a way as to interfere with Grantee's immediate and unimpeded access to said permanent right of way, or otherwise interfere with Grantee's lawful exercise of any of the rights herein granted.

TO HAVE AND TO HOLD said right of way and easement unto said Grantee, its successors and assigns, for so long as a pipeline is maintained thereon.

Grantor acknowledges that **Three Thousand Sixty-three and---00/100 dollars ($3,063.00)** of the consideration for the above described right of way and temporary work space areas as identified on the attached exhibit "A" is payment in full for any damages caused or to be caused by the construction of the first additional pipe line, facilities or improvements hereunder.

Grantee, by its acceptance hereof, covenants and agrees:

(a)   Except for the damages caused by the construction of the existing pipeline(s) and the first additional pipeline, facilities or improvements authorized hereunder, Grantee will reimburse the Grantor for any loss or damage to property which Grantor may suffer as a consequence of the laying, constructing, altering, repairing, removing, changing the size of, or replacing any pipelines, facilities or improvements, in the exercise of the rights herein granted except that neither the Grantor nor any persons or firms holding under the Grantor shall assert any claims for severance or consequential damages.

(b)   It will defend and save harmless the Grantor from any claims or suits which may be asserted against the Grantor arising out of any negligent acts of Grantee, its agents or employees, in its exercise of the rights herein granted.

Except as herein modified and amended, the Original Agreement first above referred to is hereby ratified and confirmed in all respects.

It is agreed that the aforesaid Original Agreement and this Agreement, cover all the agreements between the parties with respect to the subject matter and no representations or statements, verbal or written, have been made, modifying, adding to, or changing the terms thereof.

It is further agreed that the several terms, covenants, conditions and agreements herein contained shall in every case be binding upon and inure to the benefit of the respective parties hereto, their respective heirs, executors, successors and assigns, with the same force and effect as if specifically mentioned in each instance where a party is named.

IN TESTIMONY WHEREOF, the Grantor has hereunto set his hand and seal this _____ day of _____ 2009.

WITNESS:

_____     X_____ (SEAL)
                                          LOUIS N. OTTAVIANO, SR.

COMMONWEALTH OF PENNSYLVANIA    ⎫
                                ⎬ SS
COUNTY OF CHESTER               ⎭

On this _____ day of _____, 2009, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared **LOUIS N. OTTAVIANO, SR.** known to me (satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:

_____



**EXHIBIT E**



Elizabeth U. Witmer

Phone: (610) 251-5062

Fax: (610) 408-4400

ewitmer@saul.com

www.saul.com

February 2, 2009

<u>Via Federal Express</u>

John S. Carnes, Jr., Esquire
Beatty Lincke Law Firm
2 West Market Street, 6th Floor
West Chester, PA  19382

      Re:    Transcontinental Gas Pipe Line Company, LLC
                Sentinel Project
                Louis N. Ottaviano, Sr.
                292 S. Woodmont Drive, Downingtown, PA 19335
                Tax ID Number 40-2E-0019

Dear Mr. Carnes:

      We represent Transcontinental Gas Pipe Line Company, LLC, formerly known as Transcontinental Gas Pipe Line Corporation ("Transco"). As you know, Transco is undertaking the acquisition of easements and other property rights for a proposed natural gas pipeline replacement project (the "Sentinel Project"), which will cross on or near the property of your client, Louis N. Ottaviano, Sr., at 292 S. Woodmont Drive, Downingtown, PA, Tax ID Number 40-2E-0019. Transco's representatives have met with or spoken with your client multiple times since 2007 regarding the Sentinel Project.

      The Federal Energy Regulatory Commission ("FERC"), which regulates natural gas pipeline projects, and which approved this project by Order dated August 14, 2008, required that Transco submit to your client a Residential Construction Plan ("RCP") for comment and for final review by FERC. The RCP for your client's property was reviewed by FERC and approved on January 30, 2009.

      Sentinel Project construction is scheduled to begin this spring, and the pipeline is scheduled to be in service by November 1, 2009.

      On January 15, 2009, Transco extended to your client a final good faith offer to purchase a permanent easement across your client's property, as described in the attached Supplemental Right of Way Agreement.

      Your client has not accepted that offer.

February 2, 2009
Page 2


If your client does not execute the attached documents and accept the final offer of $4,375.00 by February 12, 2009, we will proceed to file the appropriate papers to condemn the property shortly, and we will offer to your client as estimated just compensation the appraisal amount, $3,000.00.

If your client wishes to accept this offer, or you wish to discuss it further, please contact me IMMEDIATELY at 610-251-5062 or by email at ewitmer@saul.com.

Sincerely,

Elizabeth U. Witmer

cc:    Diane Howley

TGPL 0208

Prepared by:

_____
Patrick McClusky

| | |
|---|---|
| Line #: | 10-100 |
| R/W #: | 204A1 |
| Tract #: | PD-140.0 |
| Tax #: | 40-2E-19 |
| Municipality: | East Cain |
| County: | Chester |
| Commonwealth: | Pennsylvania |

## SUPPLEMENTAL RIGHT OF WAY AGREEMENT

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF CHESTER

    This Supplemental Agreement, made the_____ Day of _____, 2009 by and between **LOUIS N. OTTAVIANO, SR.** whose address is 292 South Woodmont Drive, Downingtown, PA 19335 (hereinafter called **GRANTOR**, whether one or more) and **TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,** (formerly TRANSCONTINENTAL GAS PIPE LINE CORPORATION), a Delaware corporation having an office at 2800 Post Oak Boulevard, Houston, TX 77056-6106 its successors and assigns, (hereinafter called GRANTEE),

    WHEREAS, by an agreement dated 07/16/1951 and recorded in the Chester County Clerk's office, in Deed Book 95 Page 190 as the same may have been heretofore supplemented and amended (herein individually and collectively referred to as the Original Agreement) the Grantor or Grantor's predecessor in title did grant, bargain, sell and convey unto the Grantee, its successors and assigns, a right of way and easement therein more particularly described or referred to for the purpose, among other things, of laying, constructing, maintaining, operating, repairing, altering, replacing and removing its pipelines and appurtenant facilities under, upon, over, through and across those certain lands located in the Township of East Cain, Chester County, Commonwealth of Pennsylvania, and described as follows:

Parcel ID # 40-2E-0019 as described in deed dated 07/13/1988 and recorded in the Chester County Clerk's office on 07/20/1988 in Deed Book 1220, Page 122.

    WHEREAS, at the request of the Grantee, the Grantor has consented and agreed to further modify, amend, supplement and enlarge said Original Agreement in the manner hereinafter set forth:

    NOW, THEREFORE, in the consideration of the sum of **Four Thousand Three Hundred Seventy-five and 00/100 Dollars ($4,375.00)** cash in hand paid, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, said Grantor does hereby grant, bargain, sell, convey, ratify and confirm unto the Grantee, its successors and assigns, all that right of way and easement with the appurtenant rights and privileges and subject to the duties and obligations, all as described or referred to in the above mentioned Original Agreement, except that the said right of way and easement is hereby modified, amended, supplemented and enlarged as follows:

    1. Grantee's existing pipeline(s) is/are constructed within an existing permanent right of way and easement. Grantee agrees that no additional pipelines will be constructed within the proposed additional permanent right of way and easement. Grantor agrees that Grantee may construct and install pipelines larger than thirty-six (36) inches in diameter and may replace the existing pipelines with pipelines larger than thirty-six (36) inches in diameter.

    2. The permanent right of way and easement shall be a strip of land identified as existing right of way and proposed right of way, all as shown on a drawing marked Exhibit "A" attached hereto and made a part hereof.

3. During the course of construction of the first of the additional pipelines, facilities or improvements authorized above, Grantee shall have the right to enter upon, clear off, and use an additional strip (or strips) of land contiguous to the right of way described above, such strip (or strips) of land being identified on the attached Exhibit "A" as "Temporary Work Space."

4. Grantee shall have all other rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, including, but without limiting same to, the free and full right of ingress and egress over and across said lands of the Grantor to and from said right of way and easement and the right, from time to time as it may find convenient, to cut and remove all trees, undergrowth and other obstructions from the permanent right of way.

The Grantor specifically covenants and agrees:

(a)    The strip of land, first above described, is the permanent right of way granted.

(b)    Grantor will not build any structures on said permanent right of way or any part thereof, change the grade of said permanent right of way, or any part thereof, plant trees on said permanent right of way or any part thereof, pave longitudinally along any upon said permanent right of way or any part thereof or use said permanent right of way or any part thereof in such a way as to interfere with Grantee's immediate and unimpeded access to said permanent right of way or otherwise interfere with Grantee's lawful exercise of any of the rights herein granted.

TO HAVE AND TO HOLD said right of way and easement unto said Grantee, its successors and assigns, for so long as a pipeline is maintained thereon.

Grantor acknowledges that Three Thousand Sixty-three and---00/100 dollars ($3,063.00) of the consideration for the above described right of way and temporary work space areas as identified on the attached exhibit "A" is payment in full for any damages caused or to be caused by the construction of the first additional pipe line, facilities or improvements hereunder.

Grantee, by its acceptance hereof, covenants and agrees:

(a)    Except for the damages caused by the construction of the existing pipeline(s) and the first additional pipeline, facilities or improvements authorized hereunder, Grantee will reimburse the Grantor for any loss or damage to property which Grantor may suffer as a consequence of the laying, constructing, altering, repairing, removing, changing the size of, or replacing any pipelines, facilities or improvements in the exercise of the rights herein granted except that neither the Grantor nor any person or firm holding under the Grantor shall assert any claims for severance or consequential damages.

(b)    It will defend and save harmless the Grantor from any claims or suits which may be asserted against the Grantor arising out of any negligent acts of Grantee, its agents or employees, in its exercise of the rights herein granted.

Except as herein modified and amended, the Original Agreement first above referred to is hereby ratified and confirmed in all respects.

It is agreed that the aforesaid Original Agreement and this Agreement, cover all the agreements between the parties with respect to the subject matter and no representations or statements, verbal or written, have been made, modifying, adding to, or changing the terms thereof.

It is further agreed that the several terms, covenants, conditions and agreements herein contained shall in every case be binding upon and inure to the benefit of the respective parties hereto, their respective heirs, executors, successors and assigns, with the same force and effect as if specifically mentioned in each instance where a party is named.

IN TESTIMONY WHEREOF, the Grantor has hereunto set his hand and seal this_____day of _____ 2009.

WITNESS:

_____   X_____ (SEAL)
                                        LOUIS N. OTTAVIANO, SR.

COMMONWEALTH OF PENNSYLVANIA  ⎫
                              ⎬  SS
COUNTY OF CHESTER             ⎭

On this _____ day of _____, 2009, before me a Notary Public in and for the Commonwealth of Pennsylvania, the undersigned officer, personally appeared LOUIS N. OTTAVIANO, SR. known to me (satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purpose therein contained.

In Witness Whereof, I hereunto set my hand and official seal.

_____[SEAL]
Notary Public

My Commission Expires:

_____



EXHIBIT A

*446*

-----Original Message-----
From: Witmer, Elizabeth U.
Sent: Wednesday, February 04, 2009 3:11 PM
To: jcarnes@jcatty.com
Cc: 'McClusky, Patrick J'; Howley, Diane
Subject: FW: Ottaviano Appraisal

John - Thanks for taking the time to speak with me regarding the easement sought by Transco on the property of your client, Mr. Ottaviano. I attach the appraisal, which was delivered directly to Mr. Ottaviano. It is my understanding that a land agent attempted to contact Mr. Ottaviano in April, May and June of 2008, and did have a meeting with him in July of 2008. He mentioned at that meeting that he had an attorney but would not identify the attorney to the land agent. The land agent was not successful in obtaining a meeting with Mr. Ottaviano after the meeting in July. The land agent mailed him a new proposed agreement after that meeting in July, and mailed him a revised offer in October of 2008. Mr. Ottaviano was also sent a Residential Construction Plan for his review and comment in October 2008. Thereafter, Transco sent a final offer letter to Mr. Ottaviano in January, 2009. After that letter, Mr. Ottaviano filed a letter with FERC and the land agent discovered that you were counsel to Mr. Ottaviano. We therefore sent the follow up final offer letter to you on Monday, February 2, 2009 after FERC approved the Residential Construction Plan for Mr. Ottaviano's property. Transco seeks a negotiated acquisition of the easements proposed on Mr. Ottaviano's property. As we briefly discussed, those easements are shown on the plats attached to the easement agreement sent to you, and are discussed in the appraisal which I am forwarding with this email. Transco has offered $4,375.00 to acquire the easements sought; the appraisal amount is $3,000.00. We would like to know Mr. Ottaviano's concerns and see if we can address them. I understand you will be talking with your client and will get back to me. I look forward to talking with you about this matter.

Elizabeth Witmer
Elizabeth U. Witmer | SAUL EWING LLP | 1200 Liberty Ridge Drive, Suite 200, Wayne, PA 19087 | (610) 251-5062 | ewitmer@saul.com

1

TRAN-OTT 0201

# Law Offices of John S. Carnes, Jr.

320 N. High Street
Suite 103
West Chester, PA 19380
Phone: (610) 436-7500
Fax: (610) 436-7501
jcarnes@jcatty.com

February 11, 2009

Via facsimile (610) 651-5930 & regular mail

Elizabeth U. Witmer, Esquire
Saul Ewing LLP
1200 Liberty Ridge, Suite 200
Wayne, PA 19087-5569

> Re: *Transcontinental Gas Pipeline Company, LLC*
> *Sentinel Project – Louis N. Ottaviano, Sr.*
> *292 S. Woodmont Drive, Downingtown, PA 19335*
> *Tax I.D. # 40-2E-0019*

Dear Ms. Witmer:

I am in receipt of your letter dated February 2, 2009 sent via Federal Express as referenced above.

As you know, I have been retained to represent Louis Ottaviano and was present at the November 15, 2007 East Caln Township meeting where I met with various representatives of your client and supplied my business card to them. This is acknowledged in your February 2, 2009 letter addressed to me at the Beatty Lincke law firm, 2 West Market Street, West Chester, PA and the January 20, 2009 voicemail retained by my client from Patrick McClusky acknowledging that Williams, et al had received my business card and had obtained this from Diane Howley the land agent.

In any event, I am pleased to have received some information from you to assist me in advising my client. Mr. Ottaviano intends to assemble a legal team and wishes to negotiate with respect to but not limited to the following items:

1) Williams et al will agree to the original deed restrictions as recorded in Chester County Recorder of Deeds office dated 07/16/1951 in Deed Book 95 Page 190;
2) Williams et al will stay within the existing right-of-way;
3) Williams et al will remove (not abandon in place), take out of ground and take away from property, the old 30" pipeline A;
4) Williams, et al will agree to install the new 42" pipeline in the same place as the old 30" pipeline A;

Elizabeth U. Witmer, Esquire          Page -2-          February 11, 2009

    5) Williams et al will agree to defend and hold harmless from any and all claims now and/or in the future, which may be made, asserted against Louis Ottaviano and/or the property of 292 South Woodmont Drive, Downingtown, Pennsylvania;

    6) Williams et al will forever provide insurance protection as "Additional Named Insured" to Louis Ottaviano and/or 292 South Woodmont Drive, Downingtown, Pennsylvania;

    7) Williams et al will agree that Louis Ottaviano has the sole and exclusive right to determine how his property is to be restored; and

    8) Williams et al will agree that any and all compensation must include all expenses Louis Ottaviano has or will incur without limits.

In addressing the issues identified previously, it is also important to address the chronology that you supplied to me in your email of February 4, 2009. In speaking with Mr. Ottaviano, it is my understanding that the circumstances as you identified them are not consistent with his understanding of the events that took place. It is important that there be a complete and correct understanding of the events that have occurred so that further misunderstandings do not arise.

I am sending this letter to you because the final offer deadline that you have proposed of February 12, 2009 is an impossible deadline for my client to meet under the circumstances. More particularly, my client has many other obligations that interfere with his ability to respond in this tight time-frame. Further, he is concerned because there has never been, in his estimation, an appropriate "individual site-specific residential plan". In fact, my review of the plans that you have supplied to me indicates that they are significantly flawed. They, in essence, create a blanket easement in paragraph 4 over all of Mr. Ottaviano's property. The agreement and plans have other problems as there is no consistency with respect to the plans and the statements in the supplemental right-of-way agreement. The plans are totally inadequate and are not the quality that I am accustomed to seeing in a condemnation type proceeding or even for easement purposes. There is no identification of landmarks and the arrows do not even connect up with the areas in question. As a result the plans cannot be intelligently read and understood in conjunction with the right-of-way agreement.

Please note that this letter is written in haste and without review from others that Mr. Ottaviano is considering assembling as part of his litigation team. Accordingly, it is written without any prejudice and with no waiver of any claims or rights of Mr. Ottaviano.

I look forward to discussing this in further detail with you.

Sincerely yours,

John S. Carnes, Jr.

JSCJr/cms
cc – Louis N. Ottaviano
    Carolyn Elefant, Esq.
    Alan Rosen, Esq.

FEB-13-09 17:34 FROM:SAUL EWING REMICK SAUL     ID:16108616930          PAGE   2/3



Elizabeth U. Witmer
Phone: (610) 251-5062
Fax: (610) 408-4400
ewitmer@saul.com
www.saul.com

February 13, 2009

<u>Via Fax and First Class Mail</u>

John S. Carnes, Jr., Esq.
Law Offices of John S. Carnes, Jr.
320 N. High Street
Suite 103
West Chester, PA  19380

    Re:  Transcontinental Gas Pipe Line Company, LLC
        Sentinel Project
        Louis N. Ottaviano, Sr.
        Tax Parcel No. 40-2E-0019

Dear John,

      I acknowledge receipt of your faxed letter dated February 11, 2009. Please note that my fax number is set forth above (610-408-4400); the fax number you used is a general number for my law firm.

      As we indicated in the letter of January 15, 2009 to Mr. Ottaviano and the letter of February 2, 2009 to you, we are willing to discuss whatever questions you or your client have about Transco's offer. Although you include in your letter a laundry list of items you wish to discuss, it may be more helpful if you would provide to us with marked up copies of the proposed documents provided to you. Those documents are to a great extent forms which have been provided to the many landowners along the Downingtown Replacement of the Sentinel Project.

      You mention that you find the plat attached to the proposed offer as "totally inadequate" but fail to explain how it is inadequate. The property boundary is clearly identified, as are the existing pipelines, each of which is labeled; and the area of the existing right of way, as well as the areas of proposed right of way. As the legend indicates, the proposed right of way to be acquired is shaded on the plan and consists of two areas shown on the plan on either side of the existing residence. You say that the "arrows do not match up" but do not identify the areas of your concern. Arrows are used to show the limits of existing right of way, and the widths of various segments of the existing and proposed right of way, as well as to connect labels to the areas being labeled on the plan. This plan meets, and exceeds, the minimum requirements for a

1200 Liberty Ridge, Suite 200 ♦ Wayne, PA 19087-5569 ♦ Phone: (610) 251-5050 ♦ Fax: (610) 651-5930
DELAWARE     MARYLAND     NEW JERSEY     NEW YORK     PENNSYLVANIA     WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

February 13, 2009
Page 2

condemnation plat. The area to be acquired has also been reviewed and approved by the Federal
Energy Regulatory Commission.

    I look forward to hearing from you or a member of Mr. Ottaviano's legal team. Time is
short and the project is scheduled to begin construction this spring, but my client would greatly
prefer a negotiated acquisition of property rights from Mr. Ottaviano, as it has accomplished with
more than half of the property owners affected by this project.

                    Sincerely,

                    Elizabeth U. Witmer

Cc: Patrick McClusky

# Law Offices of John S. Carnes, Jr.

320 N. High Street
Suite 103
West Chester, PA 19380
Phone: (610) 436-7500
Fax: (610) 436-7501
jcarnes@jcatty.com

February 23, 2009

Via facsimile (610) 408-4400 & regular mail

Elizabeth U. Witmer, Esquire
Saul Ewing LLP
1200 Liberty Ridge, Suite 200
Wayne, PA  19087-5569

> Re:  *Transcontinental Gas Pipe Line Company, LLC*
>      *Sentinel Project*
>      *Louis N. Ottaviano, Sr.*
>      *Tax Parcel no. 40-2E-0019*

Dear Ms. Witmer:

Thank you very much for your letter of February 13, 2009.  In that letter you state "we are willing to discuss whatever questions you or your client have about Transco's offer." However, you then side step the list of items that my client wishes to discuss, referring to them as a "laundry list of items."  Similarly, you also side stepped my comments with regard to the plans and assert that you do not understand my comments.

In order to negotiate in good faith, I am requesting that we schedule a meeting at which time we can address the list of items identified in my prior correspondence as well as my concerns regarding the plans.  Please let me know when you are available.  However, if you do not wish to meet and do not wish to resolve the matter through negotiations, please advise and I will explain this to my client.

I note that you have offices in the Berwyn area and I am sure that my client and I can make arrangements to be present at your office to discuss this in detail.

Sincerely yours,

John S. Carnes, Jr.

JSCJr/cms
cc – Louis N. Ottaviano
     Carolyn Elefant, Esquire
     Alan Rosen, Esquire

*248*

**Witmer, Elizabeth U.**

| | |
|---|---|
| **From:** | Witmer, Elizabeth U. |
| **Sent:** | Friday, March 06, 2009 1:26 PM |
| **To:** | jcarnes@jcatty.com |
| **Cc:** | Witmer, Elizabeth U.; McClusky, Patrick J; Howley, Diane |
| **Subject:** | Ottaviano/Transco |
| **Attachments:** | CBROOK-664310 - transco sentinel ottaviano SESC plan sheet - 1.PDF; CBROOK-664309 - transco sentinel SESC plan notes - 1.PDF; CBROOK-664354 - transco sentinel form Restoration Agreement - 1.DOC |

John - Following up on our meeting the other day with Mr. Ottaviano, I have the following information for you:

Mr. Ottaviano's information requests:

1. Is pipe being abandoned in place on his property or not?  It is being removed.  There is no indication on the RCP or on his plat plan that the pipe will stay in place and it is being removed.
2. What is operating pressue of new pipe, and of current pipes A/B/C?  Old A = 650 lbs per square foot.  Existing B and C and new A:  778
3. What is deviation of centerline of new A from old A on his property (are they essentially in the same place?)  Essentially none, they are laying new A as close as possible to centerline of old A.
4. Do we have a plan of his property with contours shown?  Transco has a Soil Erosiona and Sedimentation Control Plan with contours for this property, which  is attached .
5. Safety plan.  Station 200 which is the valve station for this line has a safety plan which cannot be released to the public - it details how to shut the valves down, etc.  If the public suspect s  a problem,  they  can call the 800 number on the pipeline markers, but should call 911.

As for the ROW agreement:
1.   No additional permanent ROW on his property.  Transco cannot agree to this and is seeking to acquire the ROW shown on the plat.
2.  Other :
   a.  Pipe to be installed is 42"  The pipe to be installed is 42".  We will not limit the size of other pipes any further than is provided in the existing ROW agreements.
   b.  Notation that all of original mainline A will be removed from his property  Yes.

3.  Restoration Agreement  (not to be recorded) :
   a.  He estimates that he has less than 10 affected trees in new ROW area, a mailbox, a basketball hoop and part of his driveway area, and he has both picket and post and rail fence on the permanent easement area   Will pay 1:1 replacement cost from standard nursery stock for trees (which will have to be located outside of new easement area), will pay reasonable sum for fence (which will be removed), will restore area of driveway if affected, or pay reasonable invoice from contractor of your choice to restore, will remove mailbox and basketball hoop and will replace after construction.  See attached sample Restoration Agreement.
   b.  A dditonal insured on Transco's insurance policy  No.
   c.  Transco consents to him building no closer than the current closest point of his garage to the easement for his addition.  If no part of the building, foundation or excavation encroaches in the pipeline easement area, then Transco will not object to it.
   d.  Indemnity (sample):
Transco agrees to indemnify, defend and hold Owner harmless from and against any and all claims, liabilities, costs and expense which Owner may suffer or incur or to which Owner may be subject as a result of any act or omission on the part of Transco, its employees, agents, contractors or subcontractors, or anyone acting at the direction of, or on behalf of, Transco (collectively the "Transco Group") resulting in bodily injury (including death) to persons or damage to property, occasioned by or resulting from the activities or omissions of the Transco Group, on or about the Transco Right of Way , including but not limited to, the failure by the Transco Group to comply with the terms of this Agreement.

4/24/2009

249

We do expect to file condemnation actions starting next week.  We remain willing to negotiate with your client.
Elizabeth

Elizabeth U. Witmer, Esq.
Saul Ewing LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA  19087
(p) (610) 251-5062
ewitmer@saul.com



4/24/2009

*371*

**Pitney Bowes Philly**

| | |
|---|---|
| From: | Wilmer, Elizabeth U. |
| Sent: | Thursday, March 12, 2009 9:50 AM |
| To: | 'jcarnes@jcatty.com' |
| Subject: | Transco/Ottaviano |
| Attachments: | 20090312084354.PDF |

John -

Mr. Ottaviano's property is among the properties against which we filed a condemnation complaint.  As I told you both, he is in one of the areas in which construction is scheduled to begin early in the project.  As I told you, we remain willing to negotiate even though a complaint has been filed.

will forward to you a courtesy copy of the motion we are filing today, later today.

Elizabeth Wilmer
Elizabeth U. Wilmer, Esq.
Saul Ewing LLP
200 Liberty Ridge Drive, Suite 200
Wayne, PA  19087
p) (610) 251-5062
wilmer@saul.com



11/13/2009

*50?*

## Pitney Bowes Philly

| | |
|---|---|
| From: | Witmer, Elizabeth U. |
| Sent: | Thursday, March 26, 2009 4:39 PM |
| To: | 'John S Carnes' |
| Cc: | 'McClusky, Patrick J' |
| Subject: | RE: Transco/Ottaviano |

Dear John -

Thank you for your email. We did serve Mr. Ottaviano, but also provided you a copy of the documents served. We have been filing affidavits of service, you can see those on the online docket for the case.

As I understand your email, you want a layout of the pipelines and the right of way. We have contacted the construction division and asked them to flag the right of way and the location of the pipelines themselves on the property. This should happen in the next several days. Level 3 would have to locate its existing cable.

The station is located at 60 N. Bacton Hill Road in Frazer. The station is approximately 5.44 miles from his house. Again, in case of emergency, he should call 911.

Elizabeth Witmer
Elizabeth U. Witmer, Esq.
Saul Ewing LLP
200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087
p) (610) 251-5062
ewitmer@saul.com



---

From: John S Carnes [mailto:jcarnes@jcatty.com]
Sent: Thursday, March 26, 2009 3:11 PM
To: Witmer, Elizabeth U.
Subject: RE: Transco/Ottaviano

Dear Elizabeth:

I appreciate your sending me a courtesy copy of the condemnation complaint via email (without exhibits) and then thereafter by courier. Please note that I have not been authorized by Mr. Ottaviano to accept service from you. Accordingly, any response to your filings in federal court will run from the date that appropriate service has been made upon Mr. Ottaviano.

In order to further understand your position with respect to a possible negotiated settlement, it is critical to have the locations of the existing pipelines, the cable line and the proposed new pipeline laid out on Mr. Ottaviano's property so that he can accurately identify the existing locations and proposed locations. The layout should also include the locations of the proposed easement areas. In view of the fact that there are discrepancies with respect to the distance from the garage to the pipeline ( 2' according to Transco, or 3.01 feet according to plans of Mr. Ottaviano), a layout is necessary to establish the actual distance. This is critical because Mr. Ottaviano is going through the process of having his property appraised and the actual impact of the easement needs to be identified for this purpose.

Lastly, with respect to the public safety, Mr. Ottaviano demands to be informed as to the precise location of station 200 identified as the "emergency shutoff valve" with respect to Mr. Ottaviano's property. At a minimum, he needs to know the distance from his residence to station 200 as this is critical information needed for his own safety and also with respect to his evaluation of his property value and the further damages created by the taking that Transco is seeking to impose.

11/13/2009

TRAN-OTT 0262

Sincerely yours,

John Carnes

From: Witmer, Elizabeth U. [mailto:EWitmer@saul.com]
Sent: Thursday, March 12, 2009 9:50 AM
To: jcarnes@jcatty.com
Subject: Transco/Ottaviano

John -

Mr. Ottaviano's property is among the properties against which we filed a condemnation complaint.  As I told you both, he is in one of the areas in which construction is scheduled to begin early in the project.  As I told you, we remain willing to negotiate even though a complaint has been filed.

I will forward to you a courtesy copy of the motion we are filing today, later today.

Elizabeth Witmer
Elizabeth U. Witmer, Esq.
Saul Ewing LLP
 200 Liberty Ridge Drive, Suite 200
Wayne, PA  19087
p) (610) 251-5062
ewitmer@saul.com



"Saul Ewing LLP <saul.com>" made the following annotations:

---

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY U.S. FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

THIS E-MAIL MAY CONTAIN PRIVILEGED, CONFIDENTIAL, COPYRIGHTED, OR OTHER LEGALLY PROTECTED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT (EVEN IF THE E-MAIL ADDRESS ABOVE IS YOURS), YOU MAY NOT USE, COPY, OR RETRANSMIT IT. IF YOU HAVE RECEIVED THIS BY MISTAKE PLEASE NOTIFY US BY RETURN E-MAIL, THEN DELETE. THANK YOU. SAUL EWING'S WEB SITE IS WWW.SAUL.COM.

---

11/13/2009

*314*

**From:** John S Carnes [mailto:jcarnes@jcatty.com]
**Sent:** Monday, April 13, 2009 4:40 PM
**To:** Wilmer, Elizabeth U.
**Cc:** Louis N. Ottaviano Sr.
**Subject:** re: Ottaviano

Dear Elizabeth:

In our discussion before you filed the Amended Complaint, I understood your point to be that there was no change with respect to the actual area being condemned and that only the plan was being corrected. As I believe you explained things to me, the legal description for the "take" remained unchanged and the designations on the plan were being corrected. More particularly, you were explaining that the apparent width of the "take" identified as 7 feet was a "mistake". The plans now indicate that this area is more in the nature of 8 feet.

I do note that the new plan contains a certification by a surveyor. Your first exhibit did not contain this certification. However, as I understood your explanation, the surveyor worked off of a rebar and other monuments in preparing the legal description and identifying the locations at issue.

In speaking with Mr. Ottaviano, who was present when the property was laid out on the 30th of March, there were no measurements taken from any such monuments. Instead, all measurements were taken from the center of the pipeline. Mr. Ottaviano was present during the approximately 20-30 minutes that measurements and staking out took place. In fact, he had to loan the survey crew his plans.

Further, it appears that the actual measurements in the legal description of the "take" are not based upon measurements from identified monuments. Instead, the legal description appears to be based upon gps type coordinates.

Mr. Ottaviano's personal measurements of the laid out strip indicate that the "take" is much larger than 7 feet. Neither he nor I can correlate the legal description with the areas involved and the laid out strip. You have told me that you cannot guarantee the distances from the house because that requires you to define where the edge of the house is and requires additional determinations and a survey of the house. What then are the distance identifications with respect to the house, estimates?

You are telling me that you made one mistake but everything else is accurate and the plans have been corrected. Mr. Ottaviano has significant doubts about the surveying that took place. You told me that a different crew was out to do the second survey which was certified on the Amended Complaint. How do we know that this laid out area matches up with the legal description? It doesn't appear to correlate. Further, how do we know that the legal description is accurate? The second crew didn't take measurements from monuments and it appears that the first crew didn't as well. How can this all be sorted out? Please provide me with a written explanation with details regarding how the property was initially surveyed and then subsequently staked out.

Sincerely yours,

John Carnes

John S. Carnes, Jr. , Esquire
320 N. High Street
Suite 103
West Chester, PA  19382
v. 610.436.7500
f. 610.436.7501
jcarnes@jcatty.com

"Saul Ewing LLP <saul.com>" made the following annotations:

4/24/2009

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY U.S. FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

THIS E-MAIL MAY CONTAIN PRIVILEGED, CONFIDENTIAL, COPYRIGHTED, OR OTHER LEGALLY PROTECTED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT (EVEN IF THE E-MAIL ADDRESS ABOVE IS YOURS), YOU MAY NOT USE, COPY, OR RETRANSMIT IT. IF YOU HAVE RECEIVED THIS BY MISTAKE PLEASE NOTIFY US BY RETURN E-MAIL, THEN DELETE. THANK YOU. SAUL EWING'S WEB SITE IS WWW.SAUL.COM.

4/24/2009

313

**McClusky, Patrick J**

From:      Witmer, Elizabeth U. [EWitmer@saul.com]
Sent:      Tuesday, April 14, 2009 11:01 AM
To:        John S Carnes
Cc:        Louis N. Ottaviano Sr.; Rosenberg, James G.; McClusky, Patrick J; Bonniwell, Jennifer B.
Subject:   RE: Ottaviano

John - Look at the written legal description for the easement area, it does not matter which one you look at because they are the same, the only change is the reference to the date on the plan. The description for ROW area 1 starts:

"Beginning at the point of intersection of the easterly dividing line of Tax Parcel 40-2E-0023 and the northwesterly existing right of way line of Williams Transcontinental Gas Pipe Line Corporation, said point being the following course from a found rebar....." etc. The descriptions of both rights of way start from a found rebar, both of which are shown on the plan. The survey descriptions are both from the found rebars, and courses and distances are both recited in the written legal descriptions and shown on the plans. Those descriptions and the areas of the rights of way which are the subject of the condemnation action have never changed.

I do not know why you mention that there is no seal on the plans. The plans filed with the original complaint and with the amended complaint both were sealed as well as signed, you can see the imprint of the raised seal on the copies.

I do not know why you reference the width of the proposed right of way as 7 feet. IT IS 8 FEET AS LABELED ON THE NEW PLAT. It was always 8 feet, it was incorrectly labeled on the original plan, but as I told you, if you look at the bearings and distances tables, which have never changed, it is clearly 8 feet. There are 17 feet form the centerline of the pipeline to the edge of the existing right of way. The 8 additional feet is to maintain the standard right of way width of 25 feet.

I don't know where the crews started when they staked the right of way at your request on the 30th, but they could have started at any point on the plat since all they were doing was staking out the right of way, they were not resurveying it.

The revised plat was issued, not as a result of a resurvey of Mr. Ottaviano's property, but because when this plat was reviewed because of your client's request that it be staked out, they realized that the labels were incorrect - the perpendicular width of the proposed right of way is 8 feet, and the approximate distance from the house to the right of way is about 3 feet, not 2 feet.

We remain willing to negotiate with you a resolution of this matter if we can, but the area of the right of way sought has not changed.

Elizabeth
Elizabeth U. Witmer, Esq.
Saul Ewing LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087
(p) (610) 251-5062
ewitmer@saul.com



4/24/2009

316

**McClusky, Patrick J**

| | |
|---|---|
| From: | Witmer, Elizabeth U. [EWitmer@saul.com] |
| Sent: | Tuesday, April 21, 2009 6:29 PM |
| To: | John S Carnes |
| Cc: | Rosenberg, James G.; McClusky, Patrick J |
| Subject: | Transco/Ottaviano |

John -

Thank you for returning my call.  As I told you, we would be happy to consult with our client's engineering and construction team to consider whether we can accommodate your client's planned garage by widening "the gap" in the proposed right of way area around his residence.  As I mentioned, the plan Mr. Ottaviano sent to Transco in 2007 were not dimensioned, so it is very difficult to tell how deep the proposed garage is.  The decision to modify proposed and approved right of way cannot be made just by a land agent, so you can understand that we need to know the dimensions in order to know if it is something that our client can accommodate.  As I told you, once we have that information and have been able to evaluate it, we are happy to meet with you and your client.  If my schedule cannot be made to work, we will work something out with one of my partners.  Patrick McClusky is in Houston this week and will not be available in person, but we have other land agents who are familiar with your client's property and I'm sure we can find an appropriate person to attend a meeting.  I understand you are generally available Wednesday and Thursday afternoon, so we will work toward those times if you can get us the dimensions we need to evaluate the widening of the right of way your client is requesting.  Thanks.

Elizabeth

Elizabeth U. Witmer, Esq.
Saul Ewing LLP
1200 Liberty Ridge Drive, Suite 200
Wayne, PA  19087
(p) (610) 251-5062
ewitmer@saul.com



"Saul Ewing LLP <saul.com>" made the following annotations:

---

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY U.S. FEDERAL TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

THIS E-MAIL MAY CONTAIN PRIVILEGED, CONFIDENTIAL, COPYRIGHTED, OR OTHER LEGALLY PROTECTED INFORMATION. IF YOU ARE NOT THE INTENDED RECIPIENT (EVEN IF THE E-MAIL ADDRESS ABOVE IS YOURS), YOU MAY NOT USE, COPY, OR RETRANSMIT IT. IF YOU HAVE RECEIVED THIS BY MISTAKE PLEASE NOTIFY US BY RETURN E-MAIL, THEN DELETE. THANK YOU. SAUL EWING'S WEB SITE IS WWW.SAUL.COM.

4/24/2009