UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Elizabeth U. Witmer, Esquire<br>James G. Rosenberg, Esquire<br>Jennifer B. Bonniwell, Esquire<br>Sean T. O'Neill, Esquire<br>Attorney I.D. Nos. 55808, 16915, 93516 & 205595<br>SAUL EWING LLP<br>1200 Liberty Ridge, Suite 200<br>Wayne, PA 19087-5569<br>610-251-5050 | | |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC,<br>       Plaintiff,<br><br>   v.<br><br>PERMANENT EASEMENTS FOR 0.035 ACRES OF LAND IN EAST CALN TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, TAX PARCEL NO. 40-2E-0019, LOUIS N. OTTAVIANO, SR., et al.,<br>       Defendants. | : : : : : : : : : : : : : : : : : | Action No. 09cv01047 |

**PLAINTIFF TRANSCONTINENTAL GAS PIPE LINE
COMPANY, LLC'S RESPONSE TO DEFENDANT'S
MOTION FOR SANCTIONS UNDER F.R.C.P. 11 AND
<u>REQUEST FOR ATTORNEYS' FEES UNDER F.R.C.P. 11(c)(2)</u>**

Plaintiff Transcontinental Gas Pipe Line Company, LLC ("Transco") hereby responds to Defendant Louis N. Ottaviano, Sr.'s ("Defendant" or "Mr. Ottaviano") motion for sanctions under Rule 11(b) of the Federal Rules of Civil Procedure. The claims in the Motion are that: (1) The Complaint in this matter was filed without a factual basis for the averment that "Transco has been unable to acquire the property rights by contract" (Motion, ¶ 44) under Rule 11(b)(3) and (2) "Transco filed the Complaint for the purpose of bullying Mr. Ottaviano" (Motion, ¶ 47)

under Rule 11(b)(1).[1]  Those claims are so baseless and without merit that Transco seeks to recover its attorneys' fees in responding to this Motion under Rule 11(c)(2) and states as follows:

1. After reasonable investigation, Transco is without knowledge or information sufficient to form a belief as to the truth of the averments as to when Mr. Ottaviano retained Mr. Carnes, nor is that date relevant to any claim in this Motion.  Further, Mr. Carnes never contacted counsel for Transco until late January or early February 2009 as reflected by the February 4, 2009 e-mail from Elizabeth Witmer to Mr. Carnes attached as part of Exhibit A to the Motion.

2. Admitted.

3. It is admitted, upon information and belief, only that Mr. Carnes gave his business card to a representative of Transco at the November 15, 2007 meeting.  Transco's contact report attached as the first page of Exhibit A to the Motion reflects that Mr. Ottaviano told Laura Stauch, a land agent, on November 2, 2007 that he had an attorney, but he would not identify the attorney.  The contact report also reflects that Mr. Ottaviano and his attorney attended the November 15, 2007 meeting, but Ms. Stauch was not able to speak with them.

4. The documents attached as Exhibit A are writings which speak for themselves and any characterization of them is denied.  By way of further answer, while Mr. Ottaviano refused to tell the land agent who met with him who his counsel was, Mr. Carnes was copied on a letter sent to Transco by Mr. Ottaviano on January 17, 2009 and counsel for Transco called Mr. Carnes to find out if he was counsel for Mr. Ottaviano.  Once that representation was confirmed, counsel

---

[1] Given that Defendant has already stipulated to Transco's right to condemn, the time to have made those claims was when Transco filed its Complaint nearly one year ago, as there is no longer a way for Transco to remedy these alleged violations of Rule 11.

for Transco directed all correspondence to Mr. Carnes. Prior to that date, Mr. Carnes had not contacted counsel for Transco.

5. It is admitted that in December 2007, Transco sent a notice to Mr. Ottaviano – and to all other affected landowners – that it had filed an application with the Federal Energy Regulatory Commission ("FERC") for a Certificate of Public Convenience and Necessity authorizing the Sentinel Expansion Project. Mr. Ottaviano did not reply to that notice in any way or request that further correspondence be directed to his counsel.

6. Admitted.

7. Denied as stated. It is admitted that Transco made multiple attempts to contact Mr. Ottaviano and mailed three written offers to Mr. Ottaviano on May 23, 2008, October 25, 2008 and January 15, 2009. After "John S. Carnes, Jr., esq." was copied (along with two other attorneys) on Mr. Ottaviano's January 17, 2009 letter to Transco, Transco, through its counsel, confirmed that Mr. Carnes was counsel for Mr. Ottaviano and mailed a fourth written offer to Mr. Carnes on February 2, 2009. For ease of reference, true and correct copies of the four offer letters are attached hereto as Exhibit A. Mr. Ottaviano's January 17, 2009 letter to Transco was attached as part of Exhibit B to the Motion.

8. Denied. To the contrary, Transco did contact Mr. Carnes after it confirmed that he was Mr. Ottaviano's attorney. Mr. Ottaviano refused to tell the land agents who contacted him the identity of his attorney. See, e.g., Ottaviano Contact Log, a true and correct copy of which is attached hereto as Exhibit B; Contact Report attached as first page of Exhibit A to the Motion. By way of further answer, Elizabeth Witmer, Transco's attorney, met in-person with Mr. Ottaviano and Mr. Carnes before filing the Complaint in an attempt to acquire the necessary property rights on Mr. Ottaviano's property by contract and to address Mr. Ottaviano's concerns

and the issues they discussed are outlined in the correspondence attached as Exhibit C to the Motion. Transco readily agreed to accommodate Mr. Carnes's request for a meeting with Transco's counsel. See Mr. Carnes' February 23, 2009 letter to Ms. Witmer, attached as part of Exhibit E to the Motion.

9. The correspondence attached as Exhibit B are written documents which speak for themselves, and any characterization of them is denied.

10. It is admitted that on May 23, 2008, Transco sent an offer letter to Mr. Ottaviano that enclosed a proposed "Supplemental Right of Way Agreement." The May 23, 2008 offer letter and Supplemental Right of Way Agreement are written documents which speak for themselves, and any characterization of them is therefore denied.

11. Denied. The proposed Supplemental Right of Way Agreement sent to Mr. Ottaviano on May 23, 2008 is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied. By way of further answer, the FERC Certificate was not issued until August 14, 2008, so it is impossible for the proposed Supplemental Right of Way Agreement to expand upon rights that Transco had not yet obtained. Additionally, the proposed Supplemental Right of Way Agreement was largely a form document, as each landowner from who Transco was seeking to acquire additional right of way received a nearly identical proposed agreement from Transco.

12. The proposed Supplemental Right of Way Agreement sent to Mr. Ottaviano on May 23, 2008 is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied. By way of further answer, the proposed Supplemental Right of Way Agreement was largely a form document, as each landowner from

who Transco was seeking to acquire additional right of way received a nearly identical proposed agreement from Transco.

13.     This paragraph contains conclusions of law to which no response is required.  By way of further answer, the proposed Supplemental Right of Way Agreement sent to Mr. Ottaviano on May 23, 2008 is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied.  Additionally, the proposed Supplemental Right of Way Agreement was largely a form document, as each landowner from who Transco was seeking to acquire additional right of way received a nearly identical proposed agreement from Transco.

14.     Denied as stated.  It is admitted that on October 25, 2008, and again on January 15, 2009, Transco sent offer letters to Mr. Ottaviano in attempts to acquire the necessary rights of way on his property by contract, and that proposed "Supplemental Right of Way Agreements" were enclosed in each of those offer letters.  It is also admitted that Transco informed Mr. Ottaviano that it would exercise its eminent domain powers under the FERC Certificate if it was unable to acquire the necessary rights of way on his property by contract.  By way of further answer, see the response to paragraph 7.

15.     Denied as stated.  It is admitted only that Transco retained an appraiser to value the property rights that Transco was seeking to acquire on Mr. Ottaviano's property and that the appraiser generated two appraisal reports.  The first appraisal concluded that the value of two additional permanent easements totaling 0.035 acres was $3,000 as of December 15, 2008 (prior to the filing of the Complaint).  The second appraisal, obtained after the filing of the Complaint, concluded that the value of two additional permanent easements totaling 0.027 acres and two temporary easements totaling 0.008 acres was $3,000 as of June 3, 2009.  By way of further

answer, the Natural Gas Act provides that "the United States district courts shall only have jurisdiction of cases when the amount **claimed by the owner of the property** to be condemned exceeds $3,000." 15 U.S.C. § 717f(h) (emphasis added).

16. It is admitted only that Transco's land agent sent a final offer letter to Mr. Ottaviano on January 15, 2009 and that Mr. Ottaviano responded in a letter dated January 17, 2009. The January 15, 2009 letter from Transco and the January 17, 2009 letter from Mr. Ottaviano are written documents, the terms of which speak for themselves, and any characterization of them is therefore denied. By way of further response, Mr. Ottaviano never identified his counsel and in fact, in his January 17, 2009 letter, copied three attorneys, one of which – Mr. Carnes – indicated that he was retained to represent Mr. Ottaviano in the acquisition of the easement.

17. It is admitted only that Ms. Witmer sent an offer letter to Mr. Carnes on February 2, 2009. The February 2, 2009 letter from Ms. Witmer is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied. By way of further answer, Ms. Witmer repeatedly informed Mr. Carnes that Transco "would greatly prefer a negotiated acquisition of property rights from Mr. Ottaviano" and that it "remain[ed] willing to negotiate" with Mr. Ottaviano even after filing the Complaint and Amended Complaint. See Exhibit E to the Motion.

18. It is admitted only that Ms. Witmer spoke with Mr. Carnes on the phone on February 4, 2009. Neither Mr. Carnes nor Mr. Ottaviano responded directly to Transco or to counsel for Transco with counteroffers to the offers made in writing on May 23, 2008 or January 15, 2009.

19.     It is admitted only that Mr. Carnes sent a letter to Ms. Witmer dated February 11, 2009.  The February 11, 2009 letter from Mr. Carnes is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied.  By way of further answer, the February 11, 2009 letter was not a counteroffer, but a list of demands, such as the demand that Transco "agree that any and all compensation must include all expenses Louis Ottaviano has or will incur without limits."  Such expenses, however, are not recoverable as just compensation.  See, e.g., United States v. Bodcaw Co., 440 U.S. 202, 203 (1979) (appraisal costs caused by the taking are excluded from just compensation); Dohany v. Rogers, 281 U.S. 362, 368 (1930) (attorneys' fees and expenses are not included or embraced within just compensation for land taken for eminent domain purposes).  Mr. Ottaviano also demanded indemnification, that he be named as an additional insured, that he have the sole and exclusive right to determine how his property was restored, and that Transco stay within its existing right of way rather that acquiring a new right of way.

20.     The February 11, 2009 letter from Mr. Carnes is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied.  By way of further response, Ms. Witmer asked for clarification of the alleged discrepancies in the plans by letter dated February 13, 2009 and during the meeting she had with Mr. Carnes and Mr. Ottaviano in early March.

21.     Denied.  Ms. Witmer responded to Mr. Carnes in a letter dated February 13, 2009.  The February 13, 2009 letter from Ms. Witmer is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied.  By way of further answer, Ms. Witmer stated in her February 13, 2009 letter to Mr. Carnes that "it may be more helpful if you would provide to us with marked up copies of the proposed documents" rather than simply

listing demands as Mr. Carnes did in his February 11, 2009 letter. Ms. Witmer also asked Mr. Carnes to explain his reason for believing that the plat plan is "totally inadequate" and that the "arrows do not match up." Ms. Witmer explained that the plat plan "meets, and exceeds, the minimum requirements for a condemnation plat" and that the area to be acquired "has also been reviewed and approved by the Federal Energy Regulatory Commission."

22. It is admitted that Mr. Carnes sent a letter to Ms. Witmer dated February 23, 2009 and that Ms. Witmer responded with a letter the same day, February 23, 2009. The February 23, 2009 letter from Mr. Carnes and the February 23, 2009 letter from Ms. Witmer are written documents, the terms of which speak for themselves, and any characterization of them is therefore denied. By way of further answer, Mr. Carnes did not include "marked up copies of the proposed documents" in his February 23, 2009 letter as requested by Ms. Witmer in her February 13, 2009 letter. Likewise, Mr. Carnes did not provide further explanation of his reasons for believing that the plat plan is "totally inadequate" and that the "arrows do not match up." A true and correct copy of the February 23, 2009 letter from Ms. Witmer is attached hereto as Exhibit C, as it was not attached to the Motion.

23. It is admitted that true and correct copies of certain correspondence between counsel is attached as "Exhibit E." "Exhibit E," however, does not represent all the correspondence between counsel. The correspondence between counsel attached as "Exhibit E" are written documents, the terms of which speak for themselves, and any characterization of them is therefore denied. For purposes of completing the record, true and correct copies of the additional correspondence between Transco and/or its counsel and Mr. Ottaviano and/or his counsel is attached hereto as Exhibit D.

24. It is admitted only that there was a meeting between Mr. Ottaviano, Mr. Carnes and Ms. Witmer. Transco is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph. By way of further answer, the additional concerns of Mr. Ottaviano identified in paragraph 24 do not relate to just compensation. Additionally, Transco addressed Mr. Ottaviano's demands at the meeting and also in a March 6, 2009 email from Ms. Witmer to Mr. Carnes, and attempted to accommodate those demands which were justified under the law and that did not conflict with the requirements of the August 14, 2008 Order from FERC. See Exhibit E to the Motion.

25. Denied. It is admitted only that Transco informed Mr. Ottaviano that it would file a condemnation action if it was unable to acquire the necessary property rights by contract. By way of further answer, Transco filed nearly sixty condemnation actions to acquire the property rights necessary for construction of the Sentinel Project as required by the August 14, 2008 Order from FERC. Transco made more accommodations for Mr. Ottaviano – and had more communication as evidenced by the correspondence attached to the Motion and this Response – than it did for most other landowners. Transco needed to acquire possession of the property rights on Mr. Ottaviano's property – as well as the other properties affected by the Project – by a certain date to meet the in-service deadline of November 1, 2009. If Transco was unable to acquire the necessary property rights by contract, it filed a condemnation action to ensure the timely completion of the Project and compliance with the FERC Order.

26. Denied.

27. It is admitted only that Transco filed a Complaint in Condemnation on March 10, 2009. By way of further answer, Ms. Witmer repeatedly informed Mr. Carnes that Transco "remain[ed] willing to negotiate" with Mr. Ottaviano even after filing the Complaint and

Amended Complaint.  See, e.g., March 12, 2009 and April 14, 2009 e-mails from Ms. Witmer to Mr. Carnes, attached as part of Exhibit E to the Motion.  In fact, Transco agreed after the filing of the Complaint to convert some of the right of way needed from permanent to temporary right of way once Mr. Ottaviano produced a plan in April 2009 (after the Complaint was filed) showing an addition to his garage and/or house that he alleged he intended to build.

28.     Denied.  By way of further answer and as set forth in Transco's response to paragraph 15, it is the "amount claimed by the owner of the property to be condemned" that must exceed $3,000 for a United States district court to have jurisdiction under the Natural Gas Act.  15 U.S.C. § 717f(h).  Mr. Ottaviano refused all of Transco's offers for the rights of way taken, all of which exceeded $3,000.

29.     It is admitted only that a drawing depicting the property interests to be condemned dated August 8, 2008 was attached as Exhibit B to the Complaint in Condemnation filed by Transco on March 10, 2009.  The August 8, 2008 drawing is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied.

30.     Admitted in part, denied in part.  It is admitted only that Transco averred in the March 10, 2009 Complaint that: "Transco has been unable to acquire the above-described property rights by contract."  It is specifically denied that this averment was not true.  To the contrary, negotiations had not just begun as Transco sent four written offers – the first of which was sent in May 2008 – and had an in-person meeting between Mr. Ottaviano, Mr. Carnes and Ms. Witmer (which was not typical for the Project, but was agreed to at the request of Mr. Carnes).  Transco addressed Mr. Ottaviano's demands and attempted to accommodate those demands which were justified under the law and that did not conflict with the requirements of the

August 14, 2008 Order from FERC, but was unable to acquire the property rights by contract before filing the Complaint on March 10, 2009.

31. Denied.

32. It is admitted only that Mr. Ottaviano filed a Motion to Dismiss the March 10, 2009 Complaint. Transco is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph.

33. It is admitted only that Transco filed an Amended Complaint on April 10, 2009 and that a drawing depicting the property interests to be condemned dated March 30, 2009 was attached as Exhibit B to the Amended Complaint. By way of further answer, the legal description and area of the property interests to be condemned did not change in the Amended Complaint. The only change between the August 8, 2008 drawing and March 30, 2009 drawing was the correction of two distances that were mislabeled on the August 8, 20008 drawing.

34. Denied as stated. The additional taking has always been eight (8) feet, as reflected in the bearings and distances tables in the August 8, 2008 and March 30, 2009 drawings. There were two labeling errors in the August 8, 2008 drawing – one label showing the width of the proposed taking as seven (7) feet instead of eight (8) feet, and one label showing the distance between the proposed taking and the house as two (2) feet instead of three (3) feet – but the legal description and area of the easements Transco was seeking to condemn did not change.

35. It is admitted only that Ms. Witmer informed Mr. Carnes that the legal description and area of the proposed taking never changed in response to Mr. Carnes' questions regarding the changes made in the March 30, 2009 drawings. See April 14, 2009 e-mail from Ms. Witmer to Mr. Carnes, a true and correct copy of which is attached hereto as Exhibit E for ease of

reference; see also Exhibit E to the Motion. Transco is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in this paragraph.

36.  It is admitted that Mr. Ottaviano questioned Transco's need for the proposed taking and stated that the proposed taking would impact plans to build an addition to his garage and/or house. Transco agreed after the filing of the Complaint, and after Mr. Ottaviano produced plans for a proposed addition in April 2009 (which was after the Complaint was filed), to convert the right of way needed which would conflict with the new addition to a temporary taking.

37.  Denied. Transco agreed to reduce the amount of permanent taking to accommodate Mr. Ottaviano's plans for an addition to his garage and/or house as part of a Stipulation for Possession dated May 20, 2009 that granted Transco possession of the property rights needed to begin construction. The amount of permanent taking was reduced from 0.035 acres to 0.027 acres, and instead Transco took 0.008 acres of temporary easement. The stipulated taking was depicted in a new set of drawings dated April 28, 2009.

38.  Denied.

39.  Admitted only that the jury verdict was $8,400.00. By way of further answer, Mr. Ottaviano's demand as reflected in his written exhibits for trial were nearly twenty (20) times the jury's award of just compensation.

40.  Denied. By way of further answer, prior to filing the Complaint, Transco offered an amount that was nearly 150% of the fair market value of the property interests it was seeking to condemn on Mr. Ottaviano's property according to Transco's appraisal. Higher offers were made during negotiations after the Complaint was filed, but were always rejected. Transco attempted to address Mr. Ottaviano's concerns to the extent they were justified under the law and

did not conflict with the August 14, 2008 Order from FERC.  See Exhibit E to the Motion; Exhibits A, B, C and D to this Response.

41. The Complaint in Condemnation is a written document, the terms of which speak for themselves, and any characterization of them is therefore denied.  By way of further answer, Defendant has accurately quoted a portion of the Complaint in Condemnation.

42. This paragraph contains conclusions of law to which no response is required.

43. This paragraph contains conclusions of law to which no response is required.

44. Denied.

45. Denied.  By way of further answer, Transco offered an amount that was nearly 150% of the fair market value of the property interests it was seeking to condemn on Mr. Ottaviano's property according to Transco's appraisal prior to the filing of the Complaint. Additionally, Transco attempted to address Mr. Ottaviano's concerns to the extent they were justified under the law and did not conflict with the August 14, 2008 Order from FERC.  See Exhibit E to the Motion; Exhibits A, B, C and D to this Response.

46. Denied.

47. Denied.

48. This paragraph contains conclusions of law to which no response is required.

WHEREFORE, Plaintiff Transcontinental Gas Pipe Line Company, LLC respectfully requests that this Court deny Defendant Louis N. Ottaviano, Sr.'s Motion for Sanctions Under F.R.C.P. 11, and award Plaintiff its costs and attorneys' fees in opposing this baseless motion pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure.

    Respectfully submitted,

/s/ Validation of Signature Code EW1079
Elizabeth U. Witmer, Esquire
James G. Rosenberg, Esquire
Jennifer B. Bonniwell, Esquire
Sean T. O'Neill, Esquire
Attorney I.D. Nos. 55808, 16915, 93516 & 205595
SAUL EWING LLP
1200 Liberty Ridge, Suite 200
Wayne, PA 19087-5569
610-251-5050

*Attorneys for Plaintiff Transcontinental Gas Pipe Line Company, LLC*

Dated: February 16, 2010